PEOPLE v PARKER

Docket No. 289357. Submitted May 12, 2010, at Lansing. Decided May 20, 2010, at 9:10 a.m.

Benny R. Parker was convicted by a jury in the Saginaw Circuit Court, Darnell Jackson, J., of felonious assault, MCL 750.82, and carrying a dangerous weapon with unlawful intent, MCL 750.226. He appealed, alleging that the prosecution failed to present sufficient evidence to support his conviction of carrying a dangerous weapon with unlawful intent, because it had not proved that the knife in question had a blade of at least three inches in length, and that the prosecution made statements to the jury that were unsupported by the evidence.

The Court of Appeals *held*:

1. MCL 750.226 prohibits carrying a firearm, "dagger, dirk, razor, stiletto, or knife having a blade over 3 inches in length, or any dangerous or deadly weapon or instrument" with unlawful intent. The statute expressly targets the combination of an unlawful intent with its list of what are dangerous weapons per se. Therefore, the carrier's intent is not a factor in determining whether an instrument carried is covered by the statute. The phrase "any other dangerous or deadly weapon or instrument," following as it does a list of varied weapons that have in common that they are all dangerous per se, includes only other weapons that are dangerous per se. The specification of knives having blades more than three inches in length indicates that they are dangerous weapons per se, but knives with shorter blades are not included because they are not weapons that are dangerous per se. In specifying unlawful intent, MCL 750.226 does not by its own terms prohibit the carrying of any weapon for purposes of self-defense. In prosecutions under the statute that involve a knife, an element of the crime is that the knife's blade be more than three inches in length. Defendant's conviction of carrying a dangerous weapon with unlawful intent must be vacated.

2. Defendant claimed that the prosecutor's argument concerning the condition of the knife was unsupported by the evidence. The argument was sufficiently reflective of matters in evidence

that it did not constitute plain error. Defendant's conviction of felonious assault must be affirmed.

Vacated in part, affirmed in part, and remanded for correction of the judgment of sentence.

CRIMINAL LAW — CARRYING DANGEROUS WEAPONS WITH UNLAWFUL INTENT — WORDS AND PHRASES — DANGEROUS OR DEADLY WEAPONS OR INSTRUMENTS.

MCL 750.226 prohibits carrying a dangerous weapon with unlawful intent; the carrier's intent is not a factor in determining whether an instrument carried is covered by the statute; the phrase "any other dangerous or deadly weapon or instrument" following the list in the statute of weapons that are dangerous per se includes only other weapons that are dangerous per se within the statute's prohibition; the statute provides that knives with blades of more than three inches in length are dangerous weapons per se, while knives with shorter blades are not weapons that are dangerous per se; a blade length of more than three inches is an element of the crime in a prosecution involving a knife under MCL 750.226.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Michael D. Thomas*, Prosecuting Attorney, and *J. Thomas Horiszny*, Assistant Prosecuting Attorney, for the people.

*Neil C. Szabo* for defendant.

Before: SHAPIRO, P.J., and JANSEN and DONOFRIO, JJ.

PER CURIAM. Defendant appeals as of right his jury trial convictions of felonious assault, MCL 750.82, and carrying a dangerous weapon with unlawful intent, MCL 750.226. Because the prosecution failed to present sufficient evidence to support defendant's conviction of carrying a dangerous weapon with unlawful intent for the reason that it did not present evidence that the knife in question had a blade of at least three inches in length, we vacate that conviction. Because defendant has not established any plain error with regard to his

argument concerning prosecutorial misconduct, we affirm defendant's felonious-assault conviction.

I

Defendant's convictions arise from an incident that took place at the Gibby's Pub in Bridgeport on the evening of December 3, 2006. At trial, the owner of the bar testified that a bartender reported having problems with defendant, in response to which the owner asked defendant to leave the premises. Instead of leaving, defendant cursed and produced a knife in its open position, meaning blade out. The owner yelled that defendant had a knife, struggled with him, and commanded defendant to drop the knife. After others joined the owner in the fracas, defendant was finally disarmed and subdued.

At the close of the prosecution's proofs, defense counsel asked that the charge of carrying a dangerous weapon with unlawful intent be dismissed, on the ground that the prosecution had failed to prove that the knife in question had a blade of at least three inches in length. The prosecutor argued that any dangerous weapon satisfied the requirements of the statute. The trial court adopted the prosecutor's position, explaining, "I believe that the evidence is sufficient to show that it is a dangerous weapon at this point in time, and the jury can determine whether or not what his intention was in terms of carrying it."

Defendant testified that he had owned the knife for three months and carried it daily for such purposes as cutting open boxes. Defendant added that he typically cut open about 10 boxes each day. Describing the incident underlying this case, defendant said of the knife, "I felt stupid having it out because I wasn't going to use it, so, you know, I felt ridiculous. They called my bluff."

The trial court instructed the jury that, among the elements necessary to find defendant guilty of carrying a dangerous weapon with unlawful intent, the prosecution had to prove that defendant was "armed with a knife" and "intended to use this weapon illegally against someone else." The trial court further stated:

> A dangerous weapon is any object that is used in a way that is likely to cause serious physical injury or death. Some objects, such as guns or bombs, are dangerous because they are specifically designed to be dangerous. Other objects are designed for peaceful purposes but may be used as dangerous weapons.
>
> The way an object is used or intended to be used in an assault determines whether or not it is a dangerous weapon. If an object is used in any way that is likely to cause serious physical injury or death, it is a dangerous weapon. You must decide from all of the facts and circumstances whether the evidence showed that the defendant in question here had a dangerous weapon.

The trial court additionally instructed the jury to decide the facts solely on the basis of the evidence and that the statements of counsel were not evidence. The jury found defendant guilty as charged.

II

On appeal, defendant argues that the trial court erred by denying his motion to dismiss the charge of carrying a dangerous weapon with unlawful intent because the prosecution presented absolutely no evidence with regard to the length of the knife, contrary to the statutory language, which requires that a knife have a blade of at least three inches in length in order to qualify as a dangerous weapon. The prosecution responds that the trial court correctly focused on the potential dangerousness of the knife, rather than the

length of its blade, and that, in any event, the knife was admitted into evidence, the jury saw it, and one witness testified that it was roughly the size of a hand.

When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence, viewed in the light most favorable to the prosecution, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt. *People v Mayhew*, 236 Mich App 112, 124-125; 600 NW2d 370 (1999). Statutory interpretation presents a question of law, calling for review de novo. *People v Denio*, 454 Mich 691, 698-699; 564 NW2d 13 (1997).

Defendant was convicted of violating MCL 750.226, which provides, in pertinent part:

> Any person who, with intent to use the same unlawfully against the person of another, goes armed with a pistol or other firearm or dagger, dirk, razor, stiletto, or knife having a blade over 3 inches in length, or any other dangerous or deadly weapon or instrument, shall be guilty of a felony . . . .

In this case, the knife in question was admitted into evidence and apparently displayed to the jury, but was not given to the jurors to inspect. There was no testimony, discussion, or argument presented to the jury concerning the length of its blade. One witness described the weapon as "a hand-sized knife" with the blade open, but given that the size of that witness's hand was not in evidence and that she did not indicate precisely how the knife might align with her hand, that description does not answer the question. As a result, on this record, we are left with simply no basis for ascertaining whether the knife's blade was longer than three inches.

In 1945, our Supreme Court held that it was error to apply the three-inch specification found in the version of the statute prohibiting carrying a dangerous weapon then in effect to determine the dangerousness of a knife for purposes of the concealed-weapons statute then in effect. *People v Vaines*, 310 Mich 500, 502-504; 17 NW2d 729 (1945). The Court, further construing the concealed-weapons statute, noted that many cutting tools are manufactured and used for peaceful purposes and opined that "[w]hether or not such articles are dangerous weapons . . . would depend upon the use which the carrier made of them." *Id.* at 505. The Court thus called for distinguishing between items "designed for the purpose of bodily assault or defense," which are thus "dangerous weapons *per se*," and items that "become dangerous weapons only when they are used or carried for use as weapons." *Id.* The Court concluded that "[t]he legislature certainly did not intend to include as a dangerous weapon the ordinary type of jackknife commonly carried by many people, unless there was evidence establishing that it was used, or was carried for the purpose of use, as a weapon." *Id.* at 506.

In *People v Brown*, 406 Mich 215, 222; 277 NW2d 155 (1979), the Supreme Court reiterated that

> where a defendant is charged with carrying a "dangerous weapon" contrary to MCL 750.227 . . . , the burden is on the prosecution to prove that the instrument . . . is a dangerous weapon per se or that the instrument was used, or intended for use, as a weapon for bodily assault or defense.

Because they construed the concealed-weapons statute, MCL 750.227, not the statute prohibiting carrying a dangerous weapon with unlawful intent, MCL 750.226, or an earlier version thereof, *Brown* and *Vaines* are instructive, but not dispositive.

But in *Acrey v Dep't of Corrections*, 152 Mich App 554, 558; 394 NW2d 415 (1986), this Court, quoting the trial court's decision that cited *Brown,* 406 Mich at 222-223, stated, " 'To support the weapon element of either of these charges requires finding that an article or instrument not included in the statute's list of per se weapons must have been used or carried for use as a weapon or for purposes of assault or defense.' " *Acrey* thus stated that, for both MCL 750.226 and MCL 750.227, the statutorily specified weapons were dangerous per se and that any other potentially dangerous item carried for assaultive or defensive use likewise satisfied those respective statutes. But *Brown,* in fact, was not construing MCL 750.226, and so *Acrey*'s statement that *Brown*'s dictates covered it was overreaching.

*Brown* quoted MCL 750.227 to present its list of prohibited weapons: " 'dagger, dirk, stiletto or other dangerous weapon except hunting knives adapted and carried as such . . . .' " *Brown,* 406 Mich at 219. *Brown* then quoted approvingly from *Vaines* in listing several examples, beyond those set forth in MCL 750.227, of instruments " 'generally recognized' " as dangerous weapons per se: " 'Daggers, dirks, stilettos, metallic knuckles, slungshots, pistols, and similar articles, designed for the purpose of bodily assault or defense . . . .' " *Brown,* 406 Mich at 220-221, quoting *Vaines,* 310 Mich at 505. By including in the list items other than those set forth in MCL 750.227 that were also dangerous weapons per se, *Vaines,* and thus *Brown,* treated the statutory list as merely instructive.

In *People v Smith,* 393 Mich 432, 436; 225 NW2d 165 (1975), our Supreme Court refined the list by applying the principle of *ejusdem generis,*

whereby in a statute in which general words follow a designation of particular subjects, the meaning of the general words will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated.

Accordingly, the phrase "or other dangerous weapon except hunting knives adapted and carried as such" after a list of stabbing weapons is limited to only additional stabbing weapons. *Id.*, citing MCL 750.227.

We are therefore of the opinion that because, as *Smith* noted, MCL 750.226 expressly requires proof of intent to use a weapon unlawfully, *Smith*, 393 Mich at 437, but MCL 750.227 does not, their respective lists of weapons should be interpreted differently.

Because MCL 750.227 presents an incomplete list of instruments generally recognized as dangerous weapons per se, along with the etcetera "any other dangerous weapon," some inquiry into intent is needed to determine whether an instrument that is not a dangerous weapon per se nonetheless constitutes a dangerous weapon for purposes of that statute. See *Brown*, 406 Mich at 222-223; *Acrey*, 152 Mich App at 558. Concealed carrying of weapons that are dangerous per se, then, is prohibited without regard to intent, while concealed carrying of other weapons is prohibited only when carried with assaultive or defensive intent.

In contrast, MCL 750.226 begins with an unlawful intent element, followed by a list of what are dangerous weapons per se, and thus, no separate consideration of intent should inform the general provision "any other dangerous or deadly weapon or instrument . . . ." Because MCL 750.227 sets forth dangerous weapons, in specific and then general terms, but no intent element, a person's intent in possessing a potential weapon that is not dangerous per se is a factor in determining

whether that object qualifies for purposes of that statute. But because MCL 750.226 expressly targets the combination of an unlawful intent with its list of what are dangerous weapons per se, the carrier's intent is not a factor in determining whether an instrument carried is covered by that statute. For purposes of the latter, then, the principle of *ejusdem generis* suggests that the phrase "any other dangerous or deadly weapon or instrument," following as it does a list of varied weapons that have in common that they are all dangerous per se, includes only other dangerous weapons per se. The specification of knives with blades more than three inches in length, then, indicates that they are included as dangerous weapons per se, but knives with shorter blades are not included because they are not dangerous weapons per se.

MCL 750.227 makes an exception for a "hunting knife adapted and carried as such" in apparent recognition that hunting knives are dangerous per se but nonetheless manufactured and normally used for purposes other than aggression against humans. MCL 750.226 needs to set forth no such exception, because it specifically prohibits the carrying of dangerous weapons, no doubt including hunting knives, with unlawful intent. Further, in specifying unlawful intent, MCL 750.226 does not by its own terms prohibit the carrying of any weapon for purposes of self-defense.

The prosecution, citing *Vaines*, argues that the length of a knife's blade is not dispositive of the question of its dangerousness. The prosecution, in fact, seems to suggest that the length of the blade is of no consequence. But when construing a statute, a court should presume that every word has some meaning. *People v Seiders*, 262 Mich App 702, 705; 686 NW2d 821 (2004). Accordingly, a construction rendering some part

nugatory or surplusage should be avoided. *Id.* Further, when a specific statutory provision conflicts with a related general one, the specific one controls. *People v Houston*, 237 Mich App 707, 714; 604 NW2d 706 (1999). Hence, the statute's specification of three-inch knife blades must be given force. But that force is wholly lacking if the statute criminalizes the carrying of *any* knife when carried for unlawful reasons. To put it another way, reading the statute as targeting any knife carried for an unlawful purpose would render the three-inch specification surplusage or nugatory. See *Seiders*, 262 Mich App at 705.

For these reasons, we hold that in prosecutions under MCL 750.226 involving a knife, an element of the crime is that the knife's blade be more than three inches in length. The lack of such proof in this instance invalidates the conviction. Acquittal, not retrial, is the proper remedy, as dictated by double jeopardy principles. *People v Thompson*, 424 Mich 118, 130; 379 NW2d 49 (1985).

III

Defendant also argued that the prosecutor committed misconduct and denied defendant a fair trial by going outside the scope of the evidence and arguing matters not on record about the knife. Defendant did not object to the prosecutor's comments during trial; thus, his argument on appeal is not preserved. A defendant pressing an unpreserved claim of error must show a plain error that affected substantial rights, and the reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

In closing argument, the prosecutor stated:

> [W]ell, why did you have the knife? Well, now I got to come up with a reason. Some people carry a knife and use it every day.
>
> This knife's never been used for anything. The blade is as pristine—there's not a wear of paint off the blade anywhere. That's as sharp as the day it was sold. Ninety days, 10 boxes a day, there would be tape—sticky tape all over the outside of this knife. And we don't clean the evidence when we get it. We don't buff it up. We present it to you the way it was taken that night. There's not a fleck on that knife. That knife is as sharp as the day it came out of the manufacturer's warehouse, and there's not so much as a scratch or a wear of paint from the 90 days times 10. I didn't do my math. You guys can do that in the jury room. How many boxes has this thing supposedly opened?

Defendant specifically makes issue of the prosecutor's comments admonishing the jury that the knife was too sharp, or otherwise unworn, to have been used in the benign ways defendant had described. "Prosecutors may not make a statement of fact to the jury that is unsupported by the evidence, but they are free to argue the evidence and all reasonable inferences arising from it as they relate to the theory of the case." *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000), criticized on other grounds in *Crawford v Washington*, 541 US 36, 64; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

When defendant took the stand in his own defense, the prosecutor elicited from him that he had owned the knife for about three months, that he carried it for such purposes as cutting boxes open, and that he typically cut open about 10 boxes a day. The exchange continued as follows:

> *Q.* So three months, that's 90 days, times 10; lot a [sic] boxes you've cut open with that knife?

*A.* Yeah.

*Q.* I'm looking at this knife, and you show me one mark on this knife shows me any wear.

*A.* Right here, whole knife.

*Q.* You're saying that knife's all worn?

*A.* No.

*Q.* Well, when you're cutting—but when you're cutting boxes, you're going to dull the knife over three months?

*A.* Tape.

*Q.* Huh?

*A.* Cutting tape on boxes. You know, I ain't cutting boxes I'm cutting tape.

*Q.* Well, I mean 90 days of 10 boxes a day, this knife's going to show some wear, something; right?

*A.* Mm-hmm.

*Q.* Are you telling me this knife shows a fleck of wear on it anywhere?

*A.* Let me see.

*Q.* I'm not going to hand it to you. If I'm not going to hand it to the jury, I'm sure not going to hand it to you. Do you see any wear on it?

*A.* No.

*Q.* None.

This exchange thus did put into evidence the degree of wear the knife displayed. Further, eliciting that the knife displayed no signs of wear could reasonably be taken as eliciting that the knife appeared sharp. Although the best way to ascertain a knife's sharpness is to try to cut with it, sharpness may also be adjudged by feeling the blade or, even if to a lesser extent, by visual observation—the latter of which was available in court to defendant, and apparently also to the jury. The prosecutorial argument with which defendant takes

issue, then, was sufficiently reflective of matters in evidence as to not constitute plain error. See *Schutte,* 240 Mich App at 721.

Moreover, to the extent that the prosecutor may have stepped into argument beyond what the evidence properly allowed, the trial court's instructions that the jury decide the case solely on the basis of the evidence and that the statements of counsel were not evidence should have cured any prejudice. "It is well established that jurors are presumed to follow their instructions." *People v Graves,* 458 Mich 476, 486; 581 NW2d 229 (1998). For these reasons, we reject this claim of error.

IV

In conclusion, we hold that by failing to present evidence that the knife in question had a blade of at least three inches in length, the prosecution did not present sufficient evidence to support defendant's conviction of carrying a dangerous weapon with unlawful intent, MCL 750.226. With regard to his prosecutorial misconduct argument, defendant failed to establish any plain error.

Vacated in part, affirmed in part, and remanded for correction of the judgment of sentence with respect to the vacated conviction. We do not retain jurisdiction.