# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRANDON MAURICE HEMPHILL,

        Defendant-Appellant.

UNPUBLISHED
September 29, 2015

No. 321485
Wayne Circuit Court
LC No. 13-008288-FC

Before: K. F. KELLY, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions for first-degree murder, two counts of assault with intent to commit murder, and felony firearm. For the reasons stated below, we affirm.

## I. FACTS AND PROCEDRUAL HISTORY

On the night of May 5, 2013, defendant exchanged a number of telephone calls with his friend, Terrance Mitchell, and asked Terrance to meet him at his mother's home in Inkster. Terrance and his girlfriend, Tia Scales, arrived at the house between 11:30 PM and 12:30 AM. Defendant got into the car's backseat, and instructed Scales, who was driving, to take them to a house located in a secluded area up the street. He also asked Terrance if he was armed, to which Terrance replied that he was not. Defendant then showed Scales and Terrance that he was carrying a black, semi-automatic handgun.

When Scales had driven approximately one and one half blocks up the street, defendant told her to park the car, and she complied. He then got out of the vehicle, waited a few seconds, and then fired multiple gunshots into the passenger side of the car, where Terrance was sitting, wounding both Terrance and Scales. Scales drove the car to the closest hospital, where Terrance was pronounced dead.

Meanwhile, defendant went to a house party in an attempt to find Terrance's brother, Delante. At the party, defendant spoke with Delante's girlfriend, who told him that Delante had just left to go to the store. During the conversation, Delante's girlfriend noted that defendant wore a dark hooded sweatshirt and black jeans, and kept his hands within the sweatshirt's pockets. Defendant then left the party, ostensibly to find Delante.

-1-

Delante, who had gone to the store with two friends to purchase cigarettes, received a call from Scales that his brother had been shot. As Delante drove back to the house party to get his girlfriend, an individual wearing a black hooded sweatshirt opened fire on his car, hitting him in the leg. Thereafter, Delante picked up his girlfriend at the house party, and went to the hospital where Scales had taken Terrance.

The police did not apprehend defendant until June 2013, when U.S. Marshals who had been monitoring defendant raided his girlfriend's apartment in Durham, North Carolina. At the apartment, the Marshalls found a 0.40 caliber semi-automatic pistol. Subsequent ballistic testing revealed that this pistol fired the shell casings found at the two shooting scenes. Authorities in North Carolina extradited defendant to Michigan, and the prosecution charged him with first-degree murder, two counts of assault with intent to murder, and felony firearm. Defendant requested a jury trial, and the Wayne Circuit Court empaneled a jury to hear his case.

At trial, Scales, Delante, and Delante's girlfriend testified to the events described above. The jury also heard testimony from multiple police officers and a U.S. Marshal involved in the case. Defendant, who testified in his own defense, argued that he could not have committed the shootings because he was in North Carolina when they occurred. His girlfriend's roommate, who lives in Durham, supported these claims in her testimony. Defendant also said the 0.40 caliber semi-automatic pistol had been left in his girlfriend's apartment in Durham by one of his in-laws, who visited North Carolina for approximately a week. The jury rejected defendant's contentions, and convicted him of the charged crimes.

On appeal, defendant claims he should be granted a new trial because: (1) the prosecution presented insufficient evidence to sustain his convictions; (2) his trial attorney gave him ineffective assistance; (3) the prosecution committed misconduct; and (4) the trial judge committed misconduct.[1] The prosecution asks us to affirm defendant's convictions.

## II. STANDARD OF REVIEW

---

[1] Defendant also makes two unpreserved arguments that are particularly frivolous. Though he claims the prosecution should have more closely examined he and Terrance's respective mobile phones, the state has no duty to seek and find potentially exculpatory evidence. See *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003). In any event, defendant has failed to explain how this purported evidence would have supported his contentions that he was not in Michigan when the crimes occurred—in fact, such evidence might have *confirmed* his presence in Michigan at the time, completely undermining his credibility at trial.

Equally frivolous is defendant's assertion, in his Standard 4 brief, that a five-day delay between his arrest and arraignment caused him prejudice at trial. Such a delay is quite reasonable, in light of the fact that defendant, who had to be arraigned in Michigan, was arrested in North Carolina and attempted to fight his extradition to Michigan. Moreover, defendant in no way explains how this delay prejudiced him at trial, and his mere speculation on this score cannot substantiate his claim. See *People v Woolfolk*, 304 Mich App 450, 454; 848 NW2d 169 (2014).

When an appellate court addresses a claim for insufficiency of evidence, it reviews the record de novo. *People v Parker*, 288 Mich App 500, 504; 795 NW2d 596 (2010). Because defendant failed to preserve his claims for (1) ineffective assistance of counsel,[2] (2) prosecutorial misconduct, and (3) judicial misconduct, each of these issues is reviewed for plain error that affected defendant's substantial rights. See *People v Hurst*, 205 Mich App 634, 641; 517 NW2d 858 (1994); *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013); and *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). When such claims are unpreserved, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Carines*, 460 Mich at 763-764.

## III. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Due process requires that a defendant's conviction be based on sufficient evidence. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). When a court reviews the sufficiency of the evidence, it construes the evidence in the light most favorable to the prosecution, and determines whether a rational trier of fact could find that the essential elements of the charged crime were proven beyond a reasonable doubt. *Parker*, 288 Mich App at 504.

First-degree murder occurs when a "defendant intentionally killed the victim and . . . the act of killing was premeditated and deliberate." *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2001). To sustain a conviction of assault with intent to commit murder, the prosecution must show a defendant: (1) assaulted someone, (2) with the intent to kill him, and (3) would have murdered the victim had the assault been successful. *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005).

"Minimal circumstantial evidence is sufficient to prove an actor's state of mind." *Ortiz*, 249 Mich App at 301. The jury may infer premeditation and deliberation from evidence of the circumstances surrounding the killing. *Id*. Relevant circumstances may include: the prior relationship of the defendant and the victim, the defendant's conduct before and after the killing, and any other factors surrounding the killing that may be relevant, including the weapon used and the wounds inflicted. *People v Plummer*, 229 Mich App 293, 300-301; 581 NW2d 753 (1998). The time required for premeditation and deliberation is the time sufficient for defendant to assess his conduct, which can be mere seconds. *People v Meier*, 47 Mich App 179, 191-192; 209 NW2d 311 (1973).

---

[2] Defendant failed to ask the trial court to hold a new trial or conduct an evidentiary hearing on his trial counsel's purportedly ineffective assistance. He subsequently requested that our Court remand the case for proceedings on this matter, but another panel of our Court denied his motion. *People v Hemphill*, unpublished order of the Court of Appeals, entered September 15, 2014 (Docket No. 321485). Accordingly, he has failed to preserve this issue for appeal.

The identity of the defendant is an essential element in every criminal prosecution. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). If a rational juror could have found the prosecutor established the defendant's identity beyond a reasonable doubt, then sufficient evidence of identity exists. *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000).

Here, defendant wrongly claims that prosecution presented insufficient evidence to: (1) identify him as the shooter; (2) prove he committed first-degree murder when he killed Terrance; and (3) prove he committed assault with intent to commit murder when he shot Scales and Delante. The prosecution actually presented overwhelming evidence that defendant committed both crimes.

The jury heard eyewitness testimony from Scales, who clearly identified defendant as the man that shot her and murdered Terrance. She emphasized that defendant committed both acts with deliberate premeditation and intent to kill when he (1) instructed her to drive to a secluded area, (2) asked Terrance if he was armed (and thus able to defend himself), (3) exited the car and waited a few seconds, and (4) opened fire at close range into the car, killing Terrance and injuring her. Likewise, the jury heard testimony from Delante's girlfriend that defendant, who was wearing a dark hooded sweatshirt at the time, inquired about Delante's whereabouts at the house party, and left soon thereafter. Minutes later, the girlfriend told the jury that she heard gunshots. Delante testified to the same: as he drove back to the house party, a man wearing a dark hooded sweatshirt stood on a corner 25 to 30 feet away, fired multiple shots at his car, and injured him. The jury heard further testimony from police officers, which confirmed that the gun found at the apartment in Durham, where defendant had been staying, fired the shell casings found at each shooting scene.

Accordingly, the prosecution presented ample evidence to sustain defendant's convictions for first-degree murder and assault with intent to commit murder. *Nowack*, 462 Mich at 399-400.[3]

## B. ASSISTANCE OF COUNSEL

A defendant claiming that he received ineffective assistance of counsel must establish that " (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51-52; 826 NW2d 136 (2012). Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

---

[3] Because the prosecution presented sufficient evidence to sustain defendant's convictions for these crimes, his claim that his trial attorney gave him ineffective assistance for failure to ask for a directed verdict on these charges has no merit whatsoever. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Here, defendant unconvincingly argues that trial counsel gave him ineffective assistance because: (1) the attorney introduced evidence that defendant was involved in an unrelated armed robbery; and (2) counsel did not object to Scale's testimony that defendant murdered Terrance and shot her. The first assertion is particularly frivolous, because defendant himself referenced the armed robbery in response to his attorney's entirely neutral question of why he went to North Carolina.[4] If defendant ambushed his counsel with this admission, he cannot now claim that his counsel gave him ineffective assistance by permitting him to testify. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). Likewise, if his attorney knew about defendant's alleged reasons for being in North Carolina—as appears likely from the trial transcript—it was consistent with his overall trial strategy to elicit this information from defendant, in an attempt to show that defendant was not in Michigan when the crimes occurred. A trial strategy is not ineffective simply because it did not convince a fact-finder of defendant's innocence. *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).[5]

Defendant's contention that his attorney should have objected to Scale's identification of him as the shooter is equally unavailing. The portions of Scale's testimony he presents in support of this argument are taken out of context, and ignore the fact that her other testimony on the identity of the shooter—which he does not mention—clearly states that he murdered Terrance and shot her. His attorney had no valid basis to object to Scale's testimony, and, even assuming otherwise, doing so would not have changed the outcome of defendant's trial. *Trakhtenberg*, 493 Mich at 51-52. Accordingly, defendant's claims that his lawyer gave him ineffective assistance of counsel are without merit.

## C. JUDICIAL CONDUCT

---

[4] Specifically, defendant stated that he fled Michigan to avoid prosecution for an armed robbery in Taylor in which he was tangentially involved.

[5] Because defendant himself revealed his involvement in the armed robbery, defense counsel could not object to the prosecution's presentation of witnesses to rebut defendant's testimony on the robbery. See MRE 607. Again, trial counsel will not be held ineffective for failure to make a meritless or futile objection. *Ericksen*, 288 Mich App at 201.

For the same reason, defendant's claims that the prosecutor committed misconduct by (1) presenting these rebuttal witnesses, (2) questioning defendant about his purported involvement in the robbery, and (3) referencing the robbery in closing argument have no merit whatsoever. It is defendant who "opened the door" to questioning and rebuttal testimony on the robbery through raising it as an issue *in his own testimony*. See, again, MRE 607, and *People v McMaster*, 154 Mich App 564, 570; 398 NW2d 469 (1986). And, were we nonetheless to find that the prosecutor committed error in his actions, defendant has utterly failed to show that the prosecutor's conduct in this regard changed the outcome of his trial, because overwhelming eyewitness testimony—which directly rebutted defendant's claims that he was in North Carolina, and had nothing to do with the armed robbery—supported his convictions. See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

A criminal defendant is entitled to a "neutral and detached magistrate." *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). "The principal limitation on a court's discretion over matters of trial conduct is that its actions not pierce the veil of judicial impartiality." *People v Davis*, 216 Mich App 47, 50; 549 NW2d 1 (1996). A trial court may "interrogate witnesses, whether called by itself or by a party." *Id*. at 49.

A trial court may "interject" itself into the proceeding when: "the trial is lengthy and complex," "when attorneys are unprepared or obstreperous," to clarify testimony "when a witness is difficult or is not credible and the attorney fails to adequately probe the witness, or if a witness becomes confused," and to "elicit additional relevant information." *Id*. at 49-50 (internal citations and quotations omitted). Although a trial court's questions may damage a defendant's case, this fact alone does "not demonstrate that the court ha[s] improperly assumed the role of surrogate prosecutor." *Id*. at 51.

Here, defendant says that the trial court deprived him of a fair trial when it questioned his girlfriend's roommate, Raveena Powell. Specifically, he complains that the trial court implied Powell was not truthful in the following exchange:

*Q*. How long was [defendant] down in North Carolina with you during this timeframe?

*A*. I'm not sure when they got there. But I, like I said, May 1st is when they came to stay with me so we could work on getting the place together. We were looking for places. And the 5th is when I – we found the spot and we signed – I signed the lease and got the keys.

*Q*. And who was [defendant] there with?

*A*. Ladoris [Thompson] and her son.

*Q*. You said there was another gentleman?

*A*. Yeah, a friend, but I don't necessarily know who he was. I never met him before. I met him like twice.

*Q*. Do you remember his first name?

*A*. No, sir.

*Q*. You don't remember his first name and he was with you a number of days?

*A*. No, he wasn't with me. He didn't stay with me. I only met him twice and it was a hi/bye kind of situation, it was in passing.

*Q*. Follow-up to my questions, either of you, gentleman?

In this conversation, the trial court did not imply that Powell was dishonest. Rather, the trial court attempted to clarify portions of Powell's preceding testimony that had been confusing.

For example, Powell did not clearly explain when defendant first came to North Carolina, what date she moved into the apartment that was raided by the U.S. Marshals in June 2013, or who lived with her in the apartment. The trial court's questions to Powell were thus sensible attempts to alleviate confusion on these issues, and do not constitute misconduct. See *Davis*, 216 Mich App at 49-50.

In any event, were we nonetheless to assume that the trial court acted improperly when it questioned Powell, defendant fails to explain how, in the absence of the questioning, the outcome of his trial would have been different. See *Carines*, 460 Mich at 763-764. This is almost certainly because the outcome of the trial, in the absence of the questioning, *would not* have been different. The jury had ample opportunity, in the form of defendant's own testimony, to consider the possibility that defendant was in North Carolina at the time the crimes occurred, and yet clearly rejected this theory in favor of the overwhelming evidence that he was in Michigan on the night of the shootings.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Henry William Saad