# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GUILLERMO ARMENTA,

        Defendant-Appellant.

UNPUBLISHED
July 12, 2016

No.  324083
Wayne Circuit Court
LC No.  14-003649-FH

Before:  RIORDAN, P.J., and SAAD and M. J. KELLY, JJ.

PER CURIAM.

In a bench trial, the trial court convicted defendant of first-degree child abuse, MCL 750.136b(2), assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and resisting and obstructing a police officer, MCL 750.81d(1).  Defendant appeals, and for the reasons provided below, we affirm.

This matter arises from the injuries suffered by 21-month-old AT on June 12, 2012.  At the time, AT and her mother, Yanire Talamonte, lived with defendant in an upper-level flat in the city of Detroit.  The house also had a lower-level flat, in which Marlayne Andujar resided with her children and boyfriend, Melvyn Ceballos.  On June 12, 2012, Talamonte woke up with stomach pains.  She was concerned that the pains were related to her pregnancy, so defendant took her and AT to the hospital around 1:00 p.m.  Defendant eventually took AT back to his home, put her to bed, and asked Andujar or Ceballos to keep an eye on her while he went back to the hospital.

The events that unfolded thereafter were disputed at trial.  According to Andujar, Ceballos, and Kevin Rivera (Andujar's nephew), shortly after defendant left AT at the house, Andujar heard AT crying and discovered that she had been severely injured.  After Andujar's mother arrived at the house, they called 911 to get help for AT.  By contrast, defendant asserted that AT was uninjured when he left her at the house and that he was at the hospital for a few hours before he learned that there was a problem with AT.  The records establish that the ambulance arrived on the scene just after 8:00 p.m.  Additionally, the prosecutor's witnesses all testified that Eve Herrera was not at the house on June 12, 2012, while Herrera and defendant both testified that she was there at the time defendant dropped AT off.

## I.  RIGHT TO CONFRONTATION/RIGHT TO PRESENT DEFENSE

-1-

On appeal, defendant claims that he was denied his constitutional right of confrontation and his right to present a complete defense because the trial court improperly limited the cross-examination of Andujar. We disagree.

"To preserve an issue for appellate review, a party must object below and specify the same ground for objection that it argues on appeal." *People v Bosca*, 310 Mich App 1, 46; 871 NW2d 307 (2015). Defendant failed to argue during trial that limiting the scope of cross-examination would violate his constitutional rights to confront the witnesses presented against him or present a full defense. Therefore, these issues are not preserved for appellate review.

"This Court reviews a trial court's evidentiary rulings for abuse of discretion." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). Constitutional questions are generally reviewed de novo, including claims that a defendant was denied the right to present a defense, *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002), or confront the witnesses against him, *Benton*, 294 Mich App at 195. However, where the alleged constitutional error is not preserved for appellate review, this Court's review is limited to plain error. *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). "A defendant pressing an unpreserved claim of error must show a plain error that affected substantial rights, and the reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Parker*, 288 Mich App 500, 509; 795 NW2d 596 (2010). A defendant's substantial rights are prejudiced when the plain error affected the outcome of the lower court proceedings. *People v Cameron*, 291 Mich App 599, 618; 806 NW2d 371 (2011).

"There is no doubt that based on the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's . . . Confrontation Clause[], the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotation marks and citation omitted). However, a criminal defendant's right to present a complete defense is not without limitation. *Id.* "[A]n accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. at 474 (quotation marks and citation omitted).

Also, a defendant's constitutional right to cross-examination does not confer "an unlimited right to admit all relevant evidence or cross-examine on any subject." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). The trial court retains discretion to place reasonable limitations on the scope of cross-examination to avoid other important interests, such as witness harassment, prejudice, or confusion of the issues. *Id*. Nonetheless, "[a] limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation." *People v Kelly*, 231 Mich App 627, 644; 588 NW2d 480 (1998).

Defendant avers that the trial court improperly precluded him from questioning Andujar regarding her character for truthfulness after he elicited from her that she testified against her boyfriend in 2006 and later recanted that testimony. However, defendant overstates how Andujar testified in this trial. Andujar testified that because of her actions, Ceballos was

incarcerated back in 2006. And when asked specifically if she told the truth back in 2006, she stated, "Yes." Thus, defendant's assertion that any recantation occurred, let alone that Andujar admitted to recanting any testimony, is not supported by the record. Notably, defendant never made an offer of proof at the trial court and makes no such offer here on appeal.[1] Accordingly, defendant cannot show how the court plainly violated his right to present a defense or cross-examine when it precluded him from pursuing this line of questioning when the record is devoid of any evidence of any recantation.

Moreover, assuming that the trial court impermissibly infringed on defendant's constitutional rights by limiting the scope of cross-examination on Andujar, defendant has not shown how the error affected the outcome of the proceedings. The court not only found Andujar credible, but also witnesses Ceballos and Riveria. Thus, even if defendant were able to bring to the court's attention that Andujar was untruthful some eight years earlier, it is clear that such impeachment would have had little to no effect, as the other witnesses the court found credible testified consistently with Andujar.[2] Thus, without being able to prove any prejudice, defendant cannot prevail on this claim of constitutional error.

## II. GREAT WEIGHT OF EVIDENCE

Defendant also contends on appeal that he is entitled to a new trial because the court's verdict was against the great weight of the evidence. Again, we disagree.

"An appellate court will review a properly preserved great-weight issue by deciding whether 'the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Cameron*, 291 Mich App at 617. When a defendant claims on appeal that a verdict is against the great weight of the evidence, this Court must review the entire body of proofs. *People v Herbert*, 444 Mich 466, 475; 511 NW2d 654 (1993), overruled in part on other grounds by *People v Lemmon*, 456 Mich 625; 576 NW2d 129 (1998).

As an initial matter, defendant does not appear to challenge his conviction for resisting and obstructing a police officer, as his argument focuses entirely on the circumstances surrounding the first-degree child abuse and AWIGBH convictions. Additionally, defendant has not challenged any particular element of the charges, but rather, contends that the testimony of the prosecutor's witnesses was contradicted by indisputable fact, and thus, should not have been deemed credible by the trial court. Specifically, defendant alleges that the timing of the events

---

[1] Instead, defendant cursorily avers that Andujar "had testified falsely in a prior case." But this assertion is belied by the register of actions in that prior criminal case, in which Ceballos waived his right to a preliminary examination and pleaded guilty. Thus, without a preliminary examination and without a trial, it is unclear at what proceeding Andujar allegedly "testified falsely."

[2] Indeed, the court pointed out that it found Andujar, Ceballos, and Rivera more persuasive than the other witnesses because each of their testimonies was consistent with each other and supported by the circumstantial evidence presented at trial.

described by the prosecutor's witnesses was unbelievable in light of the objective evidence contained in the EMS report and medical records, which defendant contends demonstrates that he was not with AT at the time she was injured.

However, a defendant is not entitled to a new trial merely because there was conflicting testimony. *People v Musser*, 259 Mich App 215, 219; 673 NW2d 800 (2003). The Court should not disturb the verdict reached by the finder of fact unless contradicted testimony was impeached to the point that it could not be believed, or was otherwise contradicted with "indisputable physical facts or defied physical realities." *Id.* (quotation marks and citation omitted). Importantly, determinations concerning witness credibility are generally reserved for the trier of fact. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008).

Throughout the trial, the witnesses admitted that they were unsure of the exact timing of each event and provided guesses or approximations. According to the prosecution's witnesses, AT was uninjured when defendant arrived at the house with her, which could have been any time between 3:00 p.m. and 6:00 p.m. Defense witness Herrera indicated that defendant arrived at the house sometime after 2:00 p.m. or 2:30 p.m., and defendant testified that it was around 3:30 p.m. or 4:00 p.m. Andujar, Rivera, and Herrera all agree that defendant was in the upper-level flat with AT for a relatively short period, which could have been as short as four minutes or as long as 15 minutes. Andujar and Rivera claimed that Andujar discovered that AT was injured approximately 10 minutes after defendant left the house. Andujar asserted that the ambulance arrived 5 or 10 minutes after she called 911, and the police arrived 10 minutes after the ambulance. By contrast, Rivera indicated that the police arrived first, approximately 20 minutes after the 911, call and the ambulance arrived 10 minutes after the police. Officer Hiatt also testified that the he and Officer Chavez were on the scene before the ambulance, which arrived 15 or 20 minutes behind them. It is undisputed that the EMS report indicates that the ambulance arrived at the house just after 8:00 p.m.

Defendant suggests that the 8:00 p.m. arrival of the ambulance is inconsistent with the prosecution's timeline of events. That is, if he arrived at the house between 5:00 p.m. and 6:00 p.m. (as alleged by Andujar), and AT's injuries were discovered 20 to 25 minutes later, it is incredible to suggest that the ambulance would not have arrived until 8:00 p.m. However, defendant's argument ignores the fact that all of the witnesses testified to approximate, rather than specific, times. Additionally, Andujar and Ceballos both indicated that Andujar called her mother first and did not call 911 until after her mother arrived to help, and there is no evidence about how long it took Andujar's mother to reach the location.[3]

Undoubtedly, there was contradictory evidence offered at trial, but the prosecution's witnesses were not so seriously impeached that their testimony was rendered completely unbelievable, nor did their testimony go against indisputable facts or defy physical realities. As noted by the trial court in its findings of fact, the incident occurred in the summer when daylight

---

[3] According to the EMS report, the ambulance was dispatched at 7:49 p.m. However, this still does not address how much time passed from the time when Andujar discovered AT's injuries and the point when 911 was called.

hours are extended, which could account for the testimony estimating that defendant arrived at the house with AT earlier in the afternoon. In its findings, the trial court also indicated that it found the testimony provided by the prosecution's witnesses to be both consistent and credible. Simply put, despite the contradictory evidence presented at trial, defendant cannot establish that the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. The verdict in this matter turned on the witnesses' credibility and, absent extraordinary circumstances, this Court must defer to the fact-finder's determinations.

       Affirmed.

/s/ Michael J. Riordan
/s/ Henry William Saad
/s/ Michael J. Kelly