# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEREMY ALAN SLAYDEN,

        Defendant-Appellant.

UNPUBLISHED
February 13, 2018

No. 334609
Livingston Circuit Court
LC No. 16-023420-FH

Before: RONAYNE KRAUSE, P.J., and FORT HOOD and O'BRIEN, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of fourth-degree criminal sexual conduct (CSC IV) on two different theories, MCL 750.520(e)(1)(a) (victim between 13 and 16) and MCL 750.520e(1)(b) (force or coercion), and furnishing alcohol to a minor, MCL 435.1701. The trial court sentenced him to five years' probation for the CSC offense, with the first 10 months served in jail, and to 60 days in jail for the furnishing of alcohol to a minor conviction, with credit for 29 days served. Defendant appeals by right. We affirm.

## I. BACKGROUND

Defendant's convictions arise from the sexual assault of his daughter's thirteen-year-old friend, T.R., in February 2016. T.R. was "best friends" with defendant's daughter, S.S., and was so close with defendant that she referred to him as "dad." On the day leading up to the offenses, it was decided that T.R. would spend the night with S.S. at defendant's residence. At lunch with defendant and his girlfriend, S.S. and T.R. expressed an interest in consuming alcohol. Defendant responded jokingly, "what, do you want to be a bunch of drunks?" He denied that any further discussion of alcohol occurred. However, T.R. testified that defendant said he would buy S.S. and T.R. alcohol. T.R. said defendant had "three or four" beers at lunch while he said he had two. After lunch, the group proceeded to an outlet mall. S.S. and T.R. remained in the vehicle while defendant and his girlfriend went in to a store. When they returned, defendant presented S.S. and T.R. with what the witnesses described as "little wallets" or "clutches." T.R. said that defendant told them "here you guys go. I love you." T.R. described defendant's behavior as "hyper almost." The group then proceeded to a fast-food restaurant to obtain a beverage. While in the drive-thru, defendant left the vehicle without explanation. He was seen walking into a liquor store and the group reconvened with him there. T.R. testified that defendant came out of the store "with orange juice, Absolute Vodka, and I believed there was

-1-

tea." Defendant said that he purchased vodka and 12 Twisted Teas, which, according to the record, is an alcoholic beverage that has the same content of alcohol as beer.

The group then returned to defendant's home and his girlfriend left for the evening. Defendant's ex-wife brought over their two sons for defendant to watch for the night. Defendant said that he opened his first Twisted Tea around 5:00 p.m. and that he consumed seven throughout the course of the evening. S.S.'s boyfriend came over that evening and everyone watched movies. After the boyfriend left, defendant put "the boys" to bed. According to T.R., when defendant came back he proceeded to serve her and S.S. alcohol. Specifically, she said that he got out "two glasses and pours about an inch of the Absolute Vodka into it and the rest is orange juice." T.R. said she and S.S. each consumed their drink "[a]nd then we had another glass." T.R. stated that defendant "said he put a little bit more in that one than the first one." S.S. admitted to drinking vodka and orange juice but maintained that she and T.R. made and consumed their drinks surreptitiously, without defendant's knowledge or aid. Defendant denied any involvement in or knowledge of the underage drinking. He asserted that he went to bed while T.R. and S.S. were still awake.

In contrast, T.R. said that she and S.S were listening and dancing to music while defendant sat on the couch. T.R. recalled lying down and going to sleep on the couch where defendant was sitting. T.R. said she was lying on her stomach with her head pointed toward defendant. Her next recollection was waking up "to someone touching my face," "[l]ike my lips." The next thing T.R. remembered was "something going in my shirt," elaborating that "I remembered waking up with [defendant's] hand in my shirt and his legs are on both sides of me." T.R. said that defendant's hand was "moving around" in her shirt, touching her breast underneath her bra. She said that she started to get up and that defendant got up too and went into the kitchen. T.R. explained that she was "scared" and retrieved her phone from S.S.'s bedroom. T.R. said that defendant told her to "come lay on the couch." She declined and awakened S.S. and guided her to her bedroom. T.R. said S.S. fell back asleep and so she called her boyfriend D.H. She began crying and S.S. woke up. T.R. ended her conversation with D.H. and told S.S. "what happened." S.S. thought T.R. must have been dreaming. T.R. then informed D.H. what had occurred via text message. D.H. urged T.R. "to call someone" but she declined because she "didn't want [S.S.'s] dad to get in trouble." D.H. testified that he decided to tell his mother what had transpired and the two went to the police. Michigan State Police Trooper Trevor Radke then reviewed the text messages on D.H.'s phone.

Trooper Radke went to defendant's home the next morning at around 8:00 a.m. Defendant's ex-wife was there to pick up her sons and went to get T.R. T.R. stated to defendant that she needed to talk to him and defendant said he told her that she needed to speak with the trooper. However, T.R. said that at some point defendant "told me that I needed to lie or he was gonna go to jail." Defendant's ex-wife testified that T.R. "got down off the bed and stated that she needed to tell the police that she lied" and that she said that she had lied multiple times. Eventually, T.R. spoke with Trooper Radke, who brought up T.R.'s text messages to D.H., and she told him she "made it up for attention." He asked why she would "make something up about your best friend's father that . . . is this serious." At trial, T.R. explained that she lied to Trooper Radke because she did not want S.S.'s father "to get into trouble" and she did not want S.S. "to get taken away from her family." Trooper Radke encouraged T.R. to be truthful with her parents,

who picked her up from defendant's residence.  T.R.'s mother testified that when they got home she asked T.R whether it happened, and "she immediately was tears and said yes."

## II. ANALYSIS

The issues raised by defendant in this appeal, with one exception, were not preserved in the trial court.  We review unpreserved issues for plain error affecting substantial rights.  *People v Parker*, 288 Mich App 500, 509; 795 NW2d 596 (2010).  Relief under this standard of review "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings[.]"  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  Our review of unpreserved claims of ineffective assistance of counsel is "limited to mistakes apparent from the record."  *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense."  *People v Riley* (*After Remand*), 468 Mich 135, 140; 659 NW2d 611 (2003).  A defense counsel's performance was deficient if "it fell below an objective standard of reasonableness under prevailing professional norms."  *Id*. "There is a presumption that counsel was effective, and a defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy."  *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015).  To show prejudice, "the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different."  *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant first argues that the prosecutor improperly bolstered T.R.'s testimony by eliciting her prior consistent statements through S.S., D.H., and T.R.'s mother.  We disagree.

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  MRE 801(c). "Hearsay is not admissible except as provided by these rules."  MRE 802.  The parties dispute whether the requirements of MRE 801(d)(1)(B) were met in this case.[1]  However, our review of the record confirms that the prosecutor sought to introduce the statements under the excited utterance exception to the rule against hearsay.  Under MRE 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition[,]" is not barred by the rule against hearsay.  The "two primary

---

[1] MRE 801(d)(1)(B) provides in pertinent part as follows:

A statement is not hearsay if—

(1) *Prior Statement of Witness*.  The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . .  [MRE 801(d)(1)(B).]

requirements for excited utterances" are "1) that there be a startling event, and 2) that the resulting statement be made while under the excitement caused by the event." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). Being sexually assaulted is a startling event, *id*. at 552, and T.R.'s disclosure of the assault to S.S. and D.H. occurred almost immediately after that event. Further, under the facts of the case, T.R.'s confirmation of the assault to her mother the morning after would also qualify as a statement made while under the continuing stress of the event. See *id*. at 552-553. Because the statements were properly admitted as excited utterances, we need not reach the issue whether the requirements of MRE 801(d)(1)(B) were met. Accordingly, defendant fails to demonstrate plain error or that he was denied effective assistance of counsel by his counsel's decision to not object to the statements at issue, as defense counsel is not required to raise meritless objections. *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003).

Next, defendant argues that his counsel was ineffective for failing to consult or call an expert witness. We disagree.

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "Trial counsel's failure to a call a witness is only considered ineffective assistance if it deprived the defendant of a substantial defense. A substantial defense is one that could have affected the outcome of the trial." *People v Putnam*, 309 Mich App 240, 248; 870 NW2d 593 (2015) (internal citation omitted).

This argument stems from Trooper Radke's testimony that he did not believe T.R.'s statement to him that she had made up the CSC allegation and therefore encouraged her to be truthful with her parents. Defendant contends that an expert witness could have explained to the jury how Trooper Radke did not "follow proper protocol," leading to "pre-interview taint."[2] Critically, beyond his allegations, defendant fails to definitively establish that Trooper Radke made an error in that regard. Therefore, he fails to establish the factual predicate for his claim. *Carbin*, 463 Mich at 600. Moreover, we note that defense counsel thoroughly cross-examined Trooper Radke regarding the propriety of his statements to T.R. and her mother, and in closing argument emphasized his skepticism of Trooper Radke's handling of the interview with T.R. Indeed, not calling an expert under those circumstances could be considered a strategic choice, as defense counsel was able to suggest that Trooper Radke acted improperly without having to address whether that was actually true. Further, the suggestion that Trooper Radke caused T.R. to make a false allegation is belied by the fact that she had already disclosed the assault to S.S. and D.H. In sum, defendant has not overcome the presumption that counsel acted strategically in not retaining an expert witness. *Putnam*, 309 Mich App at 248.

---

[2] Defendant relies on an affidavit from his appellate counsel submitted in support of his motion to remand to the trial court. Defendant was required to submit an "affidavit or offer of proof regarding the facts to be established at a hearing" in support of his motion to remand. MCR 7.211(C)(1). But we denied his motion, and an appellant may not expand the record on appeal. *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999).

Defendant also argues that his counsel was ineffective for failing to object to Trooper Radke opining on T.R.'s credibility. We disagree.

It is the jury's duty to make credibility determinations, and therefore "it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). Yet, the prosecution argues, and we agree, that defense counsel was acting strategically in allowing Trooper Radke to testify whether he believed T.R.'s denial of the veracity of her text messages. In closing argument, defense counsel emphasized the "pressure" placed on T.R. by Trooper Radke's skepticism. "Defense counsel is given wide discretion in matters of trial strategy [precisely] because many calculated risks may be necessary in order to win difficult cases." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). While the case presented a credibility contest between T.R. and defendant, T.R.'s testimony was supported by her immediate disclosure of the assault to S.S. and D.H. Further, we agree with the prosecution there was no discernible reason for T.R. to contrive the allegation, as she was best friends with S.S. and so close with defendant that she called him "dad." Defense counsel could have reasonably surmised that Trooper Radke's statements provided the most compelling explanation for why T.R. was making a false allegation. Given the circumstances, the presumption that counsel acted strategically stands. *Cooper*, 309 Mich App at 80; see also *People v Stewart* (*On Remand*), 219 Mich App 38, 42; 555 NW2d 715 (1996) ("The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel").

Defendant also claims that prosecutorial misconduct resulted in him being deprived of a fair trial. We disagree.

"Prosecutorial misconduct issues are decided case by case." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). "A prosecutor's remarks must be examined in context and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). "Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). However, "[a] prosecutor may not vouch for the credibility of his witnesses by suggesting that he has some special knowledge of the witnesses' truthfulness." *Id*. But, "the prosecutor may argue from the facts that a witness should be believed[.]" *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005).

Defendant argues that the prosecutor improperly vouched for T.R.'s credibility when she explained to the jury that it was allowed to consider excited utterances because they are "inherently reliable." Viewed in context, the prosecutor was permissibly arguing that T.R.'s credibility was supported by the evidence, specifically S.S.'s and D.H.'s testimony that T.R. immediately disclosed the assault. We also note that the prosecutor accurately stated the policy underlying the excited utterance exception. See *People v McLaughlin*, 258 Mich App 635, 659; 672 NW2d 860 (2003) (recognizing the theory underlying the excited utterance exception to the hearsay rule: that an individual having just experienced a "startling event will not have the reflective capacity essential for fabrication[.]") (citation omitted). Further, the trial court instructed the jury that it was the court's duty to instruct "you on the law," that the statements of

the lawyers were not evidence, and that it was the jury's province to determine credibility. Thus, we are satisfied that the court's instructions cured any alleged prejudicial effect. *Brown*, 267 Mich App at 153; see also *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998) ("It is well established that jurors are presumed to follow their instructions.").

Defendant also argues that the prosecutor "denigrated" him by referring to him as an alcoholic and a "drunk father." The prosecutor made those comments during the cross-examination of defendant's ex-wife, who agreed that she had told a Child Protective Services (CPS) worker that defendant was an alcoholic. For context, defendant's intoxication on the day leading up to the assault was an issue explored with numerous witnesses. Defendant's ex-wife denied that defendant was intoxicated when she dropped her children off at his home, which led to a line of questioning regarding the circumstances under which she would leave her children in defendant's care. She stated that "I have taken my children from [defendant's] home when he has been intoxicated," but also said she had left her children in his care while he was "buzzed." The prosecutor was plainly, and permissibly, attacking her credibility through this line of questioning, see *People v Bell*, 88 Mich App 345, 349; 276 NW2d 605 (1979), and she was not required to do so "in the blandest possible terms." *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). Defense counsel was not required to raise a meritless objection. *Goodin*, 257 Mich App at 433.

Defendant also asserts that the prosecutor continued to denigrate him during his cross-examination. Defendant focuses on the prosecutor's questions regarding his parenting skills. Defendant's parental judgment was relevant to whether he would furnish alcohol to his underage daughter and her friend. Further, defendant's testimony on direct examination painted a picture of parental control in his home. The prosecutor was free to attack defendant's credibility by questioning his parenting skills. *Bell*, 88 Mich App at 349. Regardless, defendant fails to adequately explain how the prosecutor's thorough cross-examination was improper or denied him a fair trial. For the same reasons, defendant fails to show that his counsel's performance fell below an objective standard of reasonableness in declining to object where the prosecutor did not engage in misconduct. *Goodin*, 257 Mich App at 433.

Finally, defendant argues that he was denied his constitutional right to present a defense when the trial court precluded Trooper Radke from testifying to defendant's response when he learned of the CSC allegation. Defendant preserved this evidentiary issue and therefore our review is for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes." *Musser*, 494 Mich at 348. Reversal is only appropriate if a preserved evidentiary error "more probably than not . . . was outcome determinative." *People v Krueger*, 466 Mich 50, 54; 643 NW2d 223 (2002); see also MCL 769.26. "This Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

Defendant argues that his denial of the sexual assault to Trooper Radke was admissible as an excited utterance.[3] He contends that being accused of sexually assaulting a thirteen-year-old is a startling event and that his response was made while under the stress of that event.

Even if we were to agree with defendant's contention that the trial court abused its discretion on this evidentiary question and that Trooper Radke should have been allowed to testify to defendant's denial of the allegation, defendant cannot show outcome determinative prejudice. For example, it was made clear to the jury through other witnesses that defendant initially denied the allegation. Further, defendant himself testified to his reaction.[4] Notably, defendant was not denied his right to present a defense, particularly where defendant himself, T.R. and T.R.'s mother testified regarding his denial of the sexual assault. For these same reasons, defendant was not prejudiced by the preclusion of cumulative evidence. Accordingly, reversal is not warranted. *Krueger*, 466 Mich at 54; MCL 769.26.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Karen M. Fort Hood
/s/ Colleen A. O'Brien

---

[3] Defendant's argument that his denial was admissible as a present sense impression under MRE 803(1) is without merit because defendant's denial of the allegation was not a statement "describing or explaining an event or condition . . . ." MRE 803(1).

[4] Notably, defense counsel told the jury in his opening statement that defendant would be testifying, so it does not appear that the court's ruling on this matter compelled defendant to testify.