# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DARRIN CRAWFORD,

Defendant-Appellant.

UNPUBLISHED
October 13, 2015

No. 319998
Wayne Circuit Court
LC No. 13-007629-FC

Before: GLEICHER, P.J., and SAWYER and MURPHY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to murder, MCL 750.83, possession of a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b, and felon in possession of a firearm (felon-in-possession), MCL 750.224f. Defendant was sentenced to 23 to 35 years' imprisonment for the felonious assault conviction, five years' imprisonment for the felony-firearm, second offense, conviction, and three to five years' imprisonment for the felon-in-possession conviction. We affirm.

## I. JURY OATH

Defendant argues that the trial court's failure to administer the oath to the jury after it was impaneled and prior to the presentation of evidence, required by statute and court rule, amounts to plain error requiring reversal of his convictions. We disagree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant failed to raise the issue of an improper administration of the jury oath at trial. Thus, the issue is unpreserved. This Court reviews unpreserved issues for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to establish a plain error affecting substantial rights, the defendant must establish that (1) an error occurred, (2) the error was plain, and (3) the plain error affected his substantial rights, meaning that he was prejudiced by the error. *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (internal citation and quotations omitted).

-1-

The oath that a jury must take at the beginning of trial is defined by both statute and court rule. MCL 768.14 provides:

> The following oath shall be administered to the jurors for the trial of all criminal cases: "You shall well and truly try, and true deliverance make, between the people of this state and the prisoner at bar, whom you shall have in charge, according to the evidence and the laws of this state; so help you God."

MCR 2.511(H)(1) provides:

> The jury must be sworn by the clerk substantially as follows:

> "Each of you do solemnly swear (or affirm) that, in this action now before the court, you will justly decide the questions submitted to you, that, unless you are discharged by the court from further deliberation, you will render a true verdict, and that you will render your verdict only on the evidence introduced and in accordance with the instructions of the court, so help you God."

Our analysis of this issue is governed by our Supreme Court's recent decision in *People v Cain*, ___ Mich ___; ___ NW2d ___ (2015). For the reasons discussed below, we conclude that, in light of *Cain*, the failure to properly swear the jury does not require reversal of defendant's convictions.

In *Cain*, ___ Mich at ___; slip op at 2, after the jury was selected, the trial court asked the jury "to stand and swear to perform your duty to try the case justly and to reach a true verdict." The clerk then proceeded to swear in the jury but mistakenly read the oath given to prospective jurors before voir dire, asking them to "swear or affirm that you will true answers make to such questions as may be put to you touching upon your qualifications to serve as jurors in the cause now pending before the Court [sic][,]" and the jurors answered affirmatively. *Id*. at 2-3. On appeal, the defendant raised an unpreserved challenge to the failure to properly swear the jury, and this Court peremptorily reversed the defendant's convictions, finding that the failure to properly swear the jury was a structural error requiring a new trial under *Allan*. *Id*. at 3. After granting leave to appeal, our Supreme Court vacated this Court's order and reinstated the defendant's convictions, concluding that the error in failing to properly swear the jury did not seriously affect the fairness, integrity, or public reputation of the proceedings. *Id*. at 2.

In its analysis in *Cain*, our Supreme Court emphasized the importance of preserving issues in the trial court, *id*. at 4-5, and delineated the well-established requirements for granting relief for an unpreserved error: a defendant must demonstrate that (1) an error occurred (2) that was clear or obvious and (3) that affected substantial rights such that the outcome of the lower court proceedings was affected. *Id*. at 6, citing *Carines*, 460 Mich at 763. Once those three requirements are satisfied, an appellate court must exercise its discretion in deciding whether to reverse, and relief is warranted only if (4) the plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the

proceedings. *Cain*, ___ Mich at ___; slip op at 6, citing *Carines*, 460 Mich at 763. In *Cain*, ___ Mich at ___; slip op at 7, the parties agreed that the first and second *Carines* prongs were satisfied[1] but disagreed about the third and fourth prongs. The Court declined to address whether the third *Carines* prong was satisfied because, even if it was, the Court was "not persuaded that the trial court's failure to properly swear the jury seriously affected the fairness, integrity, or public reputation of the judicial proceedings in this case and defendant does not even argue that he is actually innocent." *Id*. at 8.

Our Supreme Court in *Cain* emphasized that the fourth *Carines* prong is to be applied on a case-specific and fact-intensive basis. *Cain*, ___ Mich at ___; slip op at 10. Thus, "[t]he operative inquiry is whether the trial court's error of failing to properly swear the jury *in the particular case* 'seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *Id*., quoting *Carines*, 460 Mich at 774.

The *Cain* Court then explained the purposes and goals of the juror's oath. *Cain*, ___ Mich at ___; slip op at 11. The oath set forth in MCR 2.511(H)(1) imposes three duties: (1) to justly decide the questions submitted, (2) to render a true verdict, and (3) to do so only on the evidence and in accordance with the court's instructions. *Cain*, ___ Mich at ___; slip op at 11.

On reviewing the record in *Cain*, the Supreme Court found "that the error of failing to properly swear the jury did not undermine the proceedings with respect to the broader pursuits and values that the oath seeks to advance." *Id*. The purpose of imparting to the jurors their duties was alternatively fulfilled largely by the trial court's instructions. *Id*. Before the swearing of the oath, the trial court told the jurors to stand and swear to perform their duties to try the case justly and to render a true verdict. *Id*. at 11-12. After the wrong oath was given, the court instructed the jurors on their responsibility to decide the facts of the case solely on the basis of the evidence admitted and the law as stated by the court, not to consider other information that was not presented in the courtroom, not to discuss the case among themselves until they began deliberating, and to keep an open mind while setting aside any bias or prejudice. *Id*. at 12. The trial court also explained the presumption of innocence and reasonable doubt concepts. *Id*. Before giving the final instructions, the court told the jurors that they took an oath to return a true and just verdict based only on the evidence and the court's instructions on the law. *Id*. In its final instructions, the court reiterated the previously described instructions, including that the jury must decide the case on the basis of the evidence and the law as stated by the court while

---

[1] The *Cain* Court declined to resolve whether the error in failing to properly swear the jury was merely the violation of a court rule, as the prosecutor claimed, or was a structural constitutional error, as the defendant claimed, because it was undisputed that since the error was unpreserved, the defendant was required to satisfy the *Carines* plain-error standard in either event. *Cain*, ___ Mich at ___ n 4; slip op at 6-7 n 4, citing *People v Vaughn*, 491 Mich 642, 666-667; 821 NW2d 288 (2012). The *Cain* Court nonetheless observed that the United States Supreme Court has found structural error to exist only in a very limited class of cases and that a lower federal court has noted that no federal court has held that the constitutional guarantee of trial by jury necessarily includes trial by *sworn* jury. *Cain*, ___ Mich at ___ n 7; slip op at 7 n 7.

setting aside any bias or prejudice. *Id*. "These instructions encompassed, in even greater detail, duties equivalent to those prescribed in the oath." *Id*. Further, the jurors took an oath to answer questions truthfully during voir dire, and all jurors indicated they could be fair and impartial. *Id*. at 12-13.

The Supreme Court again emphasized that the jurors were told at the beginning of trial to stand and swear to perform their duty to try the case justly and to reach a true verdict, the jurors then swore to give true answers to questions concerning their qualifications to serve as jurors, the trial court thoroughly explained to the jurors their duties and responsibilities, and the court at the end of trial told the jurors that they took an oath to return a true and just verdict based only on the evidence and the court's instructions on the law. *Id*. at 13. "Although this was not a perfect substitute for the oath required by MCR 2.511(H)(1), we have no reason to believe that the jurors in this case as a result of these alternative efforts to inculcate in them a proper sense of their obligations did not understand the dignity and solemnity of the proceedings." *Id*. "The record indicates that the jurors were conscious of the gravity of the task before them and the manner in which that task was to be carried out; the jurors each stated under oath that they could be fair and impartial, and the trial court thoroughly instructed them on the particulars of their duties." *Id*. at 15. Because the objectives served by the oath were achieved, albeit imperfectly, by alternative means, the absence of the oath did not seriously affect the fairness, integrity, or public reputation of the proceedings. *Id*. at 16. Reversal of the defendant's convictions was therefore not required in *Cain*, but the Supreme Court cautioned the trial court in that case and other trial courts to take care to avoid this error in the future. *Id*. at 18.

In the present case, the analysis in *Cain* leads to the conclusion that the failure to administer the juror's oath does not require reversal of defendant's convictions. As discussed, the issue is unpreserved because defendant did not object to the failure to administer the juror's oath. Therefore, defendant must satisfy the four *Carines* prongs in order to establish that he is entitled to reversal of his convictions. *Cain*, ___ Mich at ___; slip op at 6, citing *Carines*, 460 Mich at 763. There is no question that the first and second *Carines* prongs are satisfied. The failure to administer the juror's oath comprised an error, and this error is clear or obvious. As in *Cain*, we decline to address whether defendant has satisfied the third *Carines* prong, because, even if it is satisfied, we are not persuaded that the failure to swear the jury seriously affected the fairness, integrity, or public reputation of the judicial proceedings in this case, and defendant does not argue that he is actually innocent. See *Cain*, ___ Mich at ___; slip op at 8.

As in *Cain*, "the error of failing to properly swear the jury did not undermine the proceedings with respect to the broader pursuits and values that the oath seeks to advance." *Id*. at 11. The purpose of imparting to the jurors their duties was largely fulfilled by the trial court's instructions. *Id*. During jury selection, the trial court emphasized to the prospective jurors the importance of keeping an open mind and to be free to the extent humanly possible of bias, prejudice, or sympathy for either side. The prospective jurors took an oath "to answer truthfully all questions put to [them] touching upon [their] qualifications to serve as jurors[.]" The jurors indicated during voir dire that they could be fair and impartial and that they would decide the case in accordance with the trial court's instructions regarding the presumption of innocence and the prosecutor's burden to prove guilt beyond a reasonable doubt, concepts that the court explained during voir dire.

After the jury was selected, a lunch recess was taken. Following the recess, the parties stipulated that the jurors were "present and properly seated," but the transcript does not reflect that the juror's oath was administered. The trial court then instructed the jury on the presumption of innocence. The court instructed the jury that when it came time to decide the case, the jury may only consider the evidence admitted at trial, and the court explained that evidence includes only the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else the court tells the jury to consider as evidence. The court stated that the jury must follow the law as given to the jury by the court in the court's instructions. The court emphasized that the jury could only get information about the case in court when the jurors were acting as the jury and when the parties and the judge were all present. The court stated that "it is crucial that jurors are not influenced by anything outside the courtroom." The court instructed the jury that it "must decide this case based solely on the evidence you see and hear in this courtroom." The court explained that the jury would go to the jury room to decide its verdict after the evidence was presented, the lawyers made their arguments, and the court provided final instructions on the rules of law that apply to this case. The court stated that "[i]t is important for you to keep an open mind and not make a decision about anything in the case until you go to the jury room to decide the case."

Later, after the presentation of evidence and the parties' closing arguments, the court gave its final instructions to the jury. The court began by telling the jury: "Remember that you have taken an oath to return a true and just verdict, based only on the evidence and my instructions on the law. You must not let sympathy or prejudice influence your decision." The court reiterated the jury's duty to decide the facts of the case from the evidence and to follow the court's instructions on the law. The court stated, "To sum up, it is your job to decide what the facts of the case are, to apply the law as I give it to you, and, in that way, to decide the case." The court again explained the concepts of the presumption of innocence and reasonable doubt, and again emphasized the prosecutor's duty to prove each element of the charged offenses beyond a reasonable doubt. The court reiterated that the jury could only consider the evidence that was properly admitted, stated that the jury must decide the case solely on the basis of the evidence admitted at trial, and again explained what does and does not constitute evidence.

As in *Cain*, then, the purpose of imparting to the jurors their duties was alternatively fulfilled largely by the trial court's instructions. *Cain*, ___ Mich at ___; slip op at 11. The jurors swore at the beginning of voir dire to answer questions truthfully regarding their qualifications to serve as jurors, and the jurors indicated they could be fair and impartial and would decide the case in accordance with the trial court's instructions regarding the presumption of innocence and the prosecutor's burden to prove guilt beyond a reasonable doubt. After the jury was chosen, the trial court repeatedly instructed the jurors on the importance of deciding the case solely on the basis of the evidence admitted at trial and to follow the law as given to the jury in the trial court's instructions. The jury was also repeatedly reminded to keep an open mind and not to make a decision about the case until the jury went to the jury room to decide the case. After the presentation of evidence and closing arguments, the court told the jury that it had taken an oath to return a true and just verdict based only on the evidence and the court's instructions.

"Although this was not a perfect substitute for the oath required by MCR 2.511(H)(1), we have no reason to believe that the jurors in this case as a result of these alternative efforts to inculcate in them a proper sense of their obligations did not understand the dignity and solemnity

of the proceedings." *Id*. at 13. The jurors were made aware "of the gravity of the task before them and the manner in which that task was to be carried out;" the jurors also indicated their ability to "be fair and impartial, and the trial court thoroughly instructed them on the particulars of their duties." *Id*. at 15. Hence, the objectives served by the oath were achieved, albeit imperfectly, by alternative means, such that the failure to administer the oath did not seriously affect the fairness, integrity, or public reputation of the proceedings. *Id*. at 16. Reversal is therefore not required under the fourth *Carines* prong.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant claims that the evidence does not support that he ever possessed the .380 caliber gun found by police near where police found defendant lying, severely injured. Therefore, defendant claims that all three of his convictions are based on insufficient evidence because he never possessed a firearm, which would allow for reversal of his felony-firearm and felon-in-possession convictions. Further, defendant argues that the prosecution's failure to prove by sufficient evidence that he possessed the gun voids his conviction of assault with intent to commit murder because he did not shoot the complaining witness, Frederick Light. We disagree.

This Court reviews the record de novo when addressing a claim of insufficient evidence. *People v Parker*, 288 Mich App 500, 503; 795 NW2d 596 (2010); *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1999). We construe the evidence in the light most favorable to the prosecutor in determining if a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *Parker*, 288 Mich App at 504.

Due process requires that a defendant's conviction be based on sufficient evidence. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). The elements of assault with intent to commit murder are: (1) there was an assault, (2) with an actual intent to kill, and (3) if the assault had been successful, the killing would have been murder. *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). The elements of felon-in-possession are: (1) the defendant possessed a firearm, (2) the defendant had been convicted of a prior felony, and (3) less than five years had lapsed since defendant had been discharged from probation, and his right to possess a firearm has not been formally restored under MCL 28.424. *People v Perkins*, 262 Mich App 267, 270-271; 686 NW2d 237 (2004), abrogated in part on other grounds by *People v Smith-Anthony*, 494 Mich 669 (2013), citing MCL 750.224f(2). In order to achieve a conviction of felony-firearm, the prosecution must prove beyond a reasonable doubt that the defendant possessed or carried a firearm while he was committing or attempting to commit a felony. *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000), citing MCL 750.227b.

Possession of the firearm "may be actual or constructive and may be proved by circumstantial evidence. *Id*. at 437. Constructive possession of a firearm is found to exist if there is "proximity" to the weapon "together with indicia of control." *Id*. at 438. While mere proximity to a weapon is insufficient, constructive possession of a firearm exists when a defendant knows the location of the weapon and it is reasonably accessible to him. *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

Circumstantial evidence supports that defendant possessed the firearm and used it to assault Light with the intent to commit murder. Police found the .380 caliber gun at issue on the

lawn next to where defendant lay injured from gunshot wounds. Police also recovered a holster for that gun, a set of keys, and a box of .380 caliber ammunition on the lawn. While Detroit Police Officer Mary Gross testified that she did not find any .380 shell casings at the scene of the shooting, other than the one jammed inside the gun, she also indicated that it was dark when she was searching for casings, there was very little light from street lamps in the area, and she could not recall whether she used a metal detector to search for casings that evening.

Also, ample witness testimony supports that defendant shot and possessed the gun. Lolether Richardson, defendant's fiancé, testified that defendant owned a gun that matched the description of the .380 caliber gun found by police. Light testified that defendant shot him with a gun. Jermonte Jones testified that he saw defendant strike Light with the gun, although he did not witness the actual shooting. Brandon Johnson testified that he saw defendant firing the gun and then reloading its clip. Tradnaha Turner also testified that she saw defendant lift his gun and pursue Johnson. On the other hand, defendant denied possessing a gun, ammunition, or a holster, denied shooting Light or shooting at Jones or Johnson, and testified that all of these witnesses were lying in order to cover up the fact that defendant was actually shot by Rodney Turner. After hearing these inconsistent stories, the jury plainly believed the testimony of the prosecution's witnesses. This Court will not "interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger (On Remand)*, 278 Mich App 210, 222; 749 NW2d 272 (2008). In total, there was ample evidence to support the jury's conclusion that defendant possessed the .380 caliber gun.

## III. EIGHTH AMENDMENT

Defendant argues that due to his age and poor health at the time of his assault with intent to murder conviction, his sentence, which is one year above the midpoint of the minimum sentence guidelines range, which must be served consecutive to his five-year sentence on the felony-firearm, second offense, conviction, amounts to cruel and/or unusual punishment in violation of the Michigan and United States Constitutions. We disagree.

A claim that a sentence violates a defendant's constitutional right to be free from cruel and unusual punishment is a constitutional question, which this Court reviews de novo. *People v Dipiazza*, 286 Mich App 137, 143-144; 778 NW2d 264 (2009). However, defendant failed to preserve this issue below. Therefore, this Court will review it for plain error affecting substantial rights. *Carines*, 460 Mich at 763. In order to establish a plain error affecting substantial rights, the defendant must establish that (1) an error occurred, (2) the error was plain, and (3) the plain error affected his substantial rights, meaning that he was prejudiced by the error. *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (internal citation and quotations omitted).

The Eighth Amendment of the United States Constitution provides, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." US Const, Am VIII. The Michigan Constitution provides, "cruel or unusual punishment shall not be inflicted . . . ." Const 1963, art 1, § 16. "In determining whether a sentence is cruel or unusual [this Court] look[s] to the gravity of the offense and the harshness of the penalty,

comparing the penalty to those imposed for other crimes in this state as well as the penalty imposed for the same offense by other states and considering the goal of rehabilitation." *People v Poole*, 218 Mich App 702, 715; 555 NW2d 485 (1996). "[A] sentence that is proportionate is not cruel or unusual punishment." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008), citing *People v Drohan*, 264 Mich App 77, 92; 689 NW2d 750 (2004). Where a sentence falls within the appropriate guidelines range, it is presumed to be proportionate. *Id.*, citing *People v Broden*, 428 Mich 343, 354-355; 408 NW2d 789 (1987).

Defendant cannot surmount the presumption that his sentence is proportionate. Defendant's sentence for assault with intent to murder, as he admits, is well within the appropriate guidelines range. Defendant argues that the trial court violated his constitutional guarantee against cruel and unusual punishment because the minimum sentence it imposed is one year above the midpoint for the minimum sentence range for his crime.[2] Defendant further argues that his sentence is cruel and unusual because he will not be eligible for parole until he is 65 years old, and the shooting that led to his conviction left him gravely injured, such that he may never walk again. Defendant's arguments fail.

Defendant cites no caselaw to support his argument that his advanced age or endangered health at the time of his conviction allows for a finding that his sentence is disproportionate. Also, defendant did not demonstrate that compared to the penalty imposed for other crimes in this state and other states, that his sentence was cruel or unusual. *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). This Court is not required to search for support for a defendant's arguments. *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

Furthermore, this Court has held that a defendant's age is insufficient to overcome the presumptive proportionality of his sentence, particularly when the defendant has a lengthy criminal history of committing violent offenses. *People v Bowling*, 299 Mich App 552, 558-559; 830 NW2d 800 (2013). This same reasoning applies to cases where the defendant claims to have substantial health problems. Defendant, like the defendant in *Bowling*, has a lengthy criminal record. Defendant was convicted of five felonies prior to the three felonies he was convicted of in the instant case. Two of defendant's felony convictions were for possession with intent to deliver narcotics, but the remaining felony convictions were for armed robbery and felony-firearm, which are plainly violent offenses. Given his felony history, defendant cannot establish any plain error affecting his substantial rights.

Defendant also seems to suggest that his sentence is cruel and unusual because it was based on insufficient evidence. As this Court noted in *Powell*, if that were true, "the remedy would be to vacate his conviction." *Powell*, 278 Mich App at 323. Nonetheless, as discussed above in Issue II, *supra*, defendant's convictions were not based on insufficient evidence.

---

[2] The minimum sentence range for defendant's assault with intent to murder conviction was from 171 months to 356 months. The trial court imposed a sentence of 276 months (23 years).

## IV. OV 6 SCORE

Defendant argues in his Standard 4 brief on appeal that the trial court erred when it scored OV 6 at 25 because this score required the trial court to find that defendant intended to kill Light, which, pursuant to *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), is solely within the purview of the jury. We disagree. While defendant is correct that the jury must find the essential elements of the crime, defendant ignores that the jury found that defendant intended to kill Light. Therefore, the trial court simply acted in accordance with the jury verdict, as required by MCL 777.36(2)(a).

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

OV 6 of the sentencing guidelines addresses the offender's intent to kill or injure another individual. MCL 777.36(1); *Bowling*, 299 Mich App at 561. The trial court must score OV 6 when the offense is assault with intent to commit murder. MCL 777.22(1). Pursuant to MCL 777.36(1), under OV 6, a trial court must assess points according to the circumstances of the crime as follows:

(a) the offender had a premeditated intent to kill or the killing was committed while committing or attempting to commit arson, criminal sexual conduct in the first or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping or the killing was the murder of a peace officer or a corrections officer.................................50 points

(b) the offender had [an] unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result.............................25 points

(c) the offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life........................................10 points

(d) the offender had no intent to kill or injure .............................................0 points

OV 6 must be scored consistent with a jury verdict unless the court has information that was not presented to the jury. MCL 777.36(2)(a).

The elements of assault with intent to commit murder are: (1) there was an assault, (2) *with an actual intent to kill*, and (3) if the assault had been successful, the killing would have been murder. *Brown*, 267 Mich App at 147. At defendant's sentencing hearing, the trial court opined, "it should be scored at 25 points under the circumstances that I observed during trial there was an intent to kill which is one of the elements of [a]ssault [w]ith [i]ntent to [m]urder. And certainly shooting someone under that situation create[s] a very high risk of death or there

-9-

was an intent to do great bodily harm . . . ." The trial court accurately identified that the jury decided, by convicting defendant of assault with intent to commit murder, that defendant intended to kill Light when he shot him. Therefore, there was no clear error in the trial court's scoring of OV 6.

## V. SELF-INCRIMINATION

Defendant argues in his standard 4 brief on appeal that his right against self-incrimination was violated when he was required to acknowledge the existence of his prior convictions at his sentencing hearing. This argument is without merit.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *Metamora Water Serv*, 276 Mich App at 382. Defendant did not raise this issue below. Generally, this Court reviews constitutional questions de novo. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). However, defendant failed to preserve this issue, so it can only be reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763. In order to establish a plain error affecting substantial rights, the defendant must establish that (1) an error occurred, (2) the error was plain, and (3) the plain error affected his substantial rights, meaning that he was prejudiced by the error. *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. (internal citation and quotations omitted).

To determine if a defendant's sentence is eligible for a habitual offender enhancement, a trial court determines the existence of a defendant's prior convictions either at sentencing or at a presentencing hearing. MCL 769.13(5); *People v Marshall*, 298 Mich App 607, 628; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020 (2013). There is no right to a jury trial in a habitual offender proceeding. *People v Zinn*, 217 Mich App 340, 347; 551 NW2d 704 (1996). The prior conviction may be established by any relevant evidence, including information from the presentence report. MCL 769.13(5)(d); *People v Green*, 228 Mich App 684, 700; 580 NW2d 444 (1998). Due process is satisfied so long as the sentence is based on accurate information, as to the existence of prior convictions, and the defendant had a reasonable opportunity to contest the information. *Apprendi*, 530 US at 490; *People v Williams*, 215 Mich App 234, 236; 544 NW2d 480 (1996). The habitual offender procedures do not violate due process protections or the right against self-incrimination. *Zinn*, 217 Mich App at 347-349. Furthermore, because the sentence enhancements are based on additional particular criminal acts, habitual offender statutes do not impermissibly punish status, nor do they violate a defendant's constitutional right to equal protection. *People v Bewersdorf*, 438 Mich 55, 66; 475 NW2d 231 (1991), citing *People v Potts*, 55 Mich App 622, 634-639; 223 NW2d 96 (1974).

Defendant presented no evidence, either to the trial court or to this Court, that his sentence was based on inaccurate information. The existence of defendant's prior felony convictions was presented to the trial court in the presentence investigation report (PSIR), and defendant acknowledged the truth of these prior convictions at his sentencing hearing, even asking the trial court to adjust the sentencing and discharge dates for the prior felony convictions in the PSIR, as they were incorrect. Defendant also presents no new arguments to this Court as to why his required acknowledgement of his prior convictions violates his Fifth Amendment

right to silence. It is not up to this Court to make defendant's arguments for him, and as the law is well settled in this area, there is no reason to do so. See *Payne*, 285 Mich App at 195 ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ William B. Murphy