# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CARLTON VIRGIL BURKS,

        Defendant-Appellant.

UNPUBLISHED
April 18, 2017

No. 329696
Oakland Circuit Court
LC No. 2014-250303-FH

Before: RIORDAN, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree retail fraud, MCL 750.356c, and sentenced, as a fourth-offense habitual offender, MCL 769.12, to 22 months to 30 years in prison. Defendant appeals as of right. We affirm defendant's conviction and sentence but remand this case for the ministerial task of correcting the presentence investigation report (PSIR).

This matter arises from a theft that occurred at the Target store in Commerce Township on December 23, 2013. Surveillance footage of the incident showed that the perpetrator entered the store empty-handed, acquired merchandise, approached cashier Carol Marek with a piece of paper, and was directed by Marek toward the store's customer-service desk. The perpetrator then bypassed the customer-service desk without paying for the merchandise in his shopping cart and exited the store. He placed the merchandise in a truck that was registered to defendant and drove away from the premises. At trial, asset-protection officer John Carble testified that he was able to determine that three bedding items were not accounted for, and they matched the physical appearance of the merchandise that the perpetrator was seen removing from the store: a king-size duvet cover, priced at $79.99; a king-size, eight-piece bedding set, priced at $99.99; and a king-size comforter, priced at $109.99. Carble did not personally see the perpetrator, but was able to observe part of the theft by way of the store's surveillance cameras. He recognized defendant in the footage because defendant had been identified as a person of interest, suspected of an earlier theft at a different Target store. Marek was only able to identify defendant as the perpetrator based on her recollection of a photograph she saw in Carble's office.

The prosecution also presented evidence concerning other thefts that defendant had been implicated in that occurred at the Troy Target on December 24, 2013, December 26, 2013, and December 27, 2013. With respect to the last theft, security officer Jared Carlson testified that

-1-

defendant entered the store, selected an empty cart, took multiple electronic tablets from the shelves in the toy department, then proceeded to the aisle where baby monitors were kept. Although that aisle could not be captured on video by the store's surveillance cameras, defendant had several baby monitors in his cart when he left the area. Finally, defendant placed a bedding set on top of the other merchandise in his shopping cart before continuing to the checkout lanes at the front of the store. Defendant spoke with a cashier briefly, with a receipt-sized paper in his hand, and the casher gestured toward the guest-services area. Defendant left the cashier without paying for any merchandise, passed guest services, and attempted to exit the store, at which point he was apprehended. According to Carlson, the December 24, 2013, and December 26, 2013, incidents followed the same pattern, although defendant was not stopped on those dates. Defendant was ultimately charged with, and pleaded guilty to, three counts of first-degree retail fraud stemming from the Troy thefts.

## I. PRETRIAL DELAY

For his first claim of error, defendant contends that the excessive delay between his arrest and trial constituted a denial of his constitutional right to a speedy trial and violation of Michigan's statutory 180-day rule. We disagree.

This Court reviews questions of constitutional law, as well as questions involving statutory interpretation, de novo. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). The trial court's findings of fact are reviewed for clear error. *Id*. "A finding is clearly erroneous if 'the reviewing court is left with a definite and firm conviction that a mistake has been made.' " *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014), quoting *People v Johnson*, 466 Mich 491, 498; 647 NW2d 480 (2002).

### A. CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

A criminal defendant has the right to a speedy trial, pursuant to the federal and Michigan constitutions. *People v McLaughlin*, 258 Mich App 635, 644; 672 NW2d 860 (2003). This Court applies the balancing test established by the United States Supreme Court in *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), to determine whether a defendant was denied his constitutional right to a speedy trial. *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999). Under the *Barker* test, four factors are taken into consideration: "(1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant." *Id*. (quotation marks and citation omitted). A delay that of 18 months or more is presumptively prejudicial, making it incumbent upon the prosecution to demonstrate that the defendant was not, in fact, prejudiced. *Id*.

Under the first *Barker* factor, the length of the delay is generally measured from the date of the defendant's arrest until the time that trial commences. See *People v Waclawski*, 286 Mich App 634, 665; 780 NW2d 321 (2009). Defendant was arrested on December 27, 2013, but his arrest was made in connection with thefts that he committed at the Target store in Troy, rather than the theft underlying the instant charge. Thus, the length of the pretrial delay at issue here is more appropriately measured from the date on which defendant was formerly charged. See

*United States v Marion*, 404 US 307, 320; 92 S Ct 455; 30 L Ed 2d 468 (1971) (stating that "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment"). The prosecution filed the complaint/general information in district court on February 20, 2014, and defendant's trial commenced over 18 months later, on September 1, 2015.

The second *Barker* factor concerns the reasons for the delay. *Cain*, 238 Mich App at 112. This factor requires the Court to determine "whether each period of delay is attributable to the defendant or the prosecution." *Waclawski*, 286 Mich App at 666. Delays that are unexplained or result from docket congestion are attributable to the prosecution, "[a]lthough delays inherent in the court system, e.g., docket congestion, . . . are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Id*. (quotation marks and citations omitted).

In his brief on appeal, defendant concedes that his attorneys sought numerous adjournments to obtain discovery and investigate, thereby delaying the progress of his case during the following periods: 21 days between June 6, 2014, and June 27, 2014; 14 days between September 12, 2014, and September 26, 2014; 35 days[1] between November 14, 2014, and December 19, 2014; 40 days between December 19, 2014, and January 28, 2015; 14 days between June 5, 2015, and June 19, 2015; and 28 days between August 3, 2015, and August 31, 2015. Thus, approximately five months of the delay should be attributed to defendant as a result of his counsels' adjournment requests. An additional two months of delay can be attributed to defendant for the period between July 9, 2014—when defendant requested a different attorney, with the explicit warning that the delay would be attributed to him—and September 12, 2014— when defendant's case was scheduled for the next pretrial in circuit court. Finally, defendant was also responsible for the three-month delay that occurred when he was in the custody of Wayne County facing unrelated charges and, therefore, unavailable for trial. See *id*., 286 Mich App at 666-667 (finding that period during which a defendant is unavailable for trial as a result of detention in another jurisdiction is attributable to the defendant).

It appears that the bulk of the delay—at least 10 months' worth—was attributable to defendant. There is no indication in the record that the prosecution failed to diligently pursue the case against defendant and prepare for trial. In fact, the prosecution expressed concern on the record about the repeated delays on several occasions. The remaining delays appear to be attributable to the docket congestion that is inherent in the court system. As noted, those delays are technically attributable to the prosecution, but are viewed with a neutral tint and assigned minimal weight. *Id*. at 666.

---

[1] Defendant mistakenly indicates that the period between November 14, 2014, and December 19, 2014, totaled 34 days.

Under the third *Barker* factor, this Court considers whether the defendant asserted his right to a speedy trial. *Cain*, 238 Mich App at 112. Defendant filed a formal demand for a speedy trial on September 12, 2014. Thus, this factor weighs in his favor.

The final factor under the *Barker* test is prejudice to the defendant. *Id*. "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *People v Williams*, 475 Mich 245, 264; 716 NW2d 208 (2006) (quotation marks and citation omitted). The delay in this case, which exceeded 18 months, gives rise to a rebuttable presumption of prejudice. *Cain*, 238 Mich App at 112. The prosecution correctly notes that defendant was not personally prejudiced in this case because he would have been incarcerated in any event as a result of the other charges that were pending against him in Wayne County. Moreover, defendant pleaded guilty to three counts of first-degree retail fraud on March 7, 2014, and was sentenced to 2 to 20 years' imprisonment on April 4, 2014. Accordingly, it does not appear that defendant was prejudiced by oppressive pretrial incarceration that he would not otherwise have been required to serve. The prosecution also argues that defendant's defense was not prejudiced by the delay in this case because all key witnesses and evidence remained available for trial. We agree. There is no indication in the record that defendant's defense would have been any different had his trial commenced earlier. Although defendant contends that his defense was prejudiced because the delay adversely affected his memory of the December 23, 2013, incident, general allegations of this nature are typically insufficient to establish prejudice for purposes of speedy-trial analysis. *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997).

Taking each factor into consideration, we conclude that the pretrial delay in this case did not deprive defendant of his constitutional right to a speedy trial. Although the length of the delay gave rise to a presumption of prejudice, it does not appear that defendant was actually prejudiced. More importantly, a majority of the delay is attributable to defendant. By contrast, there is no suggestion in the record that the prosecution intentionally delayed the trial in this case. Finally, while defendant asserted his right to a speedy trial approximately one year before he was tried, the effect of this demand is diminished by the fact that his counsel requested multiple adjournments thereafter.

B. 180-DAY RULE

"[A]n inmate housed in a state correctional facility who has criminal charges pending against him shall be brought to trial within 180 days after the [Department of Corrections] delivers written notice of information concerning the inmate's imprisonment to the prosecuting attorney." *People v Lown*, 488 Mich 242, 255; 794 NW2d 9 (2011) (internal quotation marks and citation omitted); MCL 780.131(1). If "action is not commenced" within 180 days, Michigan courts lose jurisdiction and must dismiss the charges with prejudice. MCL 780.133. "[T]his Court has long held that to commence action within the 180–day period, a prosecutor need not ensure that the *trial* actually begins, or is completed, within that period." *Lown*, 488 Mich at 256-257. Instead, the prosecutor, to comply with the rule, need only begin the proceedings against the defendant on the charges. *Id*. at 257. The pertinent question with respect to the 180-day rule is not whether a delay of 180 days can be attributed to the prosecution. *Lown*, 488 Mich at 262. Rather, this Court must consider whether the action was commenced within the applicable 180-day period. *Id*. "If so, the rule has been satisfied unless

the prosecutor's initial steps were followed by inexcusable delay beyond the 180-day period and an evident intent not to bring the case to trial promptly . . . ." *Lown*, 488 Mich at 262-263 (quotation marks and citation omitted).

It is evident that the 180-day period at issue in this case began on April 16, 2014,[2] and ended on October 12, 2014. Although defendant was not tried until well after the expiration of this period, the proceedings were clearly commenced within the applicable timeframe. Defendant was arraigned in the district court on May 9, 2014, and a pretrial was originally scheduled in the circuit court for June 6, 2014. The pretrial was adjourned twice and eventually held on July 9, 2014. It is evident that the prosecution was actively preparing the case for trial during this period because it filed a first amended information on June 23, 2014, to correct the mistaken offense date set forth in the original information. Further, at the July 9, 2014, pretrial, the prosecution expressed concern that remanding the matter to the district court for a preliminary examination on the first amended information would inhibit its ability to bring the case to trial by October 12, 2014. In view of all the circumstances, the delay in this case did not violate the 180-day rule.

## II. MRE 404(B) OTHER-ACTS EVIDENCE

Defendant next claims that he was deprived a fair trial by the admission of allegedly excessive other-acts evidence concerning the December 17, 2013, December 24, 2013, December 26, 2013, and December 27, 2013 thefts. We disagree.

To preserve a claim that evidence was improperly admitted at trial, the party challenging the evidence must object at the time of admission. *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004). The party's objection must be based on the same ground asserted on appeal. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant filed a written response opposing the prosecution's motion to admit evidence of the shoplifting incidents that occurred on the latter three dates, arguing that evidence of other shoplifting incidents was highly prejudicial and that admission of such evidence would deprive him of the right to a fair trial. Thus, this issue is properly preserved with respect to the evidence concerning those dates. However, the prosecution's motion did not relate to evidence concerning the alleged shoplifting incident that occurred on December 17, 2013, nor did defendant object when the prosecution elicited testimony concerning that incident at trial. Accordingly, to the extent that defendant's claim of error relates to the testimony about December 17, 2013, the issue is not preserved.

This Court generally reviews a trial court's decision to admit other-acts evidence for an abuse of discretion. *People v McGhee*, 268 Mich App 600, 609; 709 NW2d 595 (2005). An abuse of discretion exists if the trial court's decision "is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

---

[2] Indeed, the prosecution argues that it received a request for disposition from the Department of Corrections on April 15, 2014, and defendant does not dispute this. In addition, defendant cites an overruled point of law in arguing that the 180-period commenced earlier.

There is generally no abuse of discretion when the trial court's decision involves a close evidentiary question. *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000). To the extent that this issue is unpreserved, defendant, to obtain relief, must demonstrate that a plain error affected his substantial rights. *People v Parker*, 288 Mich App 500, 509; 795 NW2d 596 (2010). A defendant's substantial rights are prejudiced when the plain error affected the outcome of the lower-court proceedings. *People v Cameron*, 291 Mich App 599, 618; 806 NW2d 371 (2011). With respect to an unpreserved claim of error, "the reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Parker*, 288 Mich App at 509.

MRE 404(b) provides, in pertinent part:

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

To the extent that other-acts evidence is offered to prove identification through modus operandi, the admissibility of such evidence is considered under the following test:

"(1) there is substantial evidence that the defendant committed the similar act (2) there is some special quality of the act that tends to prove the defendant's identity (3) the evidence is material to the defendant's guilt, and (4) the probative value of the evidence sought to be introduced is not substantially outweighed by the danger of unfair prejudice." [*Waclawski*, 286 Mich App at 673, quoting *People v Ho*, 231 Mich App 178, 186; 585 NW2d 357 (1998).]

Defendant's evidentiary challenge is limited to the prejudice prong; he argues only that the allegedly excessive amount of other-acts evidence presented at trial made it unfairly prejudicial.[3] This Court has recognized that all evidence offered against a party at trial is

---

[3] Defendant correctly notes in passing that only three of the four other acts introduced at trial were identified in the prosecution's motion to admit evidence. That is, the prosecution failed to identify the December 17, 2013, incident in its motion and the evidence concerning that date was not within the scope of the trial court's pretrial ruling admitting the other-acts evidence. However, he makes no argument that the procedural defect amounted to error and the passing reference to said defect does not properly present that issue for appellate review. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) (stating that "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority").

prejudicial, and only unfairly prejudicial evidence must be excluded. *McGhee*, 268 Mich App at 613-614. Unfair prejudice refers to "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Id.* at 614 (quotation marks and citations omitted). Unfair prejudice may also exist when minimally probative evidence is likely to be given too much weight by the jury. *Id.*

In assessing the probative value and potential prejudicial effect of proposed evidence, the trial court should consider several factors, including "the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Here, there is no indication that the other-acts evidence required unreasonably excessive time to present or that it caused a delay in the proceedings. The prosecution called only three witnesses, and the entire trial—from jury selection to verdict—was completed in less than six hours. Nor was the evidence needlessly cumulative. The main probative value of the evidence concerning the theft incidents at the Troy Target lay in the unique pattern employed by defendant in each offense, which made his identity as the perpetrator in the December 23, 2013, theft more probable. This evidence was invaluable to the prosecution's case because the other evidence concerning defendant's identity[4] was not conclusive. Although the prosecution was able to implicate defendant in the December 23, 2013, shoplifting because the vehicle that was driven by the perpetrator was registered to defendant, it would have been a possibility that the vehicle was driven by someone else at the time. The trial court did not abuse its discretion by admitting the challenged other-acts evidence. Further, any prejudice that might have resulted from the other-acts evidence was diminished by the court's instruction to the jury regarding the limited relevance of evidence concerning uncharged misconduct.

## III. SUFFICIENCY OF THE EVIDENCE

Next, defendant claims that there was insufficient evidence presented by the prosecution concerning the "value" of the property that was stolen from the Commerce Township Target. Again, we disagree.

When a defendant challenges the sufficiency of evidence on appeal, the record is reviewed de novo. *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014). This Court must "view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have concluded that the elements of the offense were proven beyond a reasonable doubt." *People v Unger*, 278 Mich App 210, 222; 749 NW2d

---

[4] Although we are focusing on the "identity" purpose of the other-acts evidence, the other two purposes cited by the trial court—absence of mistake and the use of a scheme, plan, or system— were also proper, and the latter is intertwined with the "identity" purpose.

272 (2008). This Court must not interfere with the factfinder's role of "determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Under MCL 750.356d(1)(b), a person who, "[w]hile a store is open to the public, steals property of the store that is offered for sale at a price of $200.00 or more but less than $1,000.00" is guilty of second-degree retrial fraud. However, pursuant to MCL 750.356c(2), a person who commits second-degree retail fraud, as defined in MCL 750.356d(1), is guilty of first-degree retail fraud if that person has been previously convicted of an enumerated theft offense, including first-degree retail fraud. See also *People v Justice*, 216 Mich App 633, 634-635; 550 NW2d 562 (1996). "The existence of the defendant's prior conviction or convictions shall be determined by the court, without a jury, at sentencing or at a separate hearing for that purpose before sentencing." MCL 750.356c(4). Thus, where a defendant is charged with first-degree retail fraud based on the combined effect of MCL 750.356c(2) and MCL 750.356d(1)(b), as defendant was here, the prosecution must prove the following elements beyond a reasonable doubt: (1) that the defendant took property that a store offered for sale; (2) that the defendant moved the property; (3) that the defendant intended to steal the property; (4) that the theft occurred inside the store or in the immediate vicinity; and (5) that the price of the property was $200 or more, but less than $1,000. MCL 750.356c(2); MCL 750.356d(1)(b); see also M Crim JI 23.13.

According to defendant, the prosecution failed to prove with specificity the "value" of the stolen property because there was no conclusive evidence presented regarding exactly which items were taken. This argument lacks merit because Carble offered testimony regarding the items that were stolen and the price of each item. Although Carble did not see defendant select the items that were stolen, he testified that he went to the sales floor after observing defendant exit the store with unbagged merchandise and determined that a duvet cover, bedding set, and comforter were missing from the shelves. Using a handheld device that provided real-time inventory information, Carble confirmed that the missing items were not accounted for and discovered that the price of the three items totaled $289.97. Carble also reviewed the surveillance footage and confirmed that the physical appearance of the merchandise in defendant's cart was consistent with the description of the missing bedding items. Thus, a rational jury could have found, beyond a reasonable doubt, that defendant stole the items identified by Carble and that the combined price of the merchandise was more than $200 and less than $1,000.

Defendant also contends that there was insufficient evidence regarding the "value" of the stolen property because "price tags would not necessarily have represented their true value." In support of this argument, defendant relies on *People v Johnson*, 133 Mich App 150; 348 NW2d 716 (1984),[5] and *Blount v State*, 30 So 3d 662 (Fla App, 2010). Even if the cited cases were

---

[5] This Court is not bound by *Johnson* because it was decided by a panel of the Court of Appeals before November 1, 1990. MCR 7.215(J)(1); see also *People v Vandenberg*, 307 Mich App 57, 66 n 2; 859 NW2d 229 (2014).

precedentially binding on this Court, neither case is persuasive with respect to defendant's argument, because both involve offenses that are distinguishable from first-degree retail fraud. In *Johnson*, the defendant was convicted of larceny under MCL 750.356, which explicitly provides different levels of punishment based on the "value" of the property stolen. MCL 750.356; *Johnson*, 133 Mich App at 152. Likewise, *Blount* involved a conviction for theft of property "valued" at a particular amount. *Blount*, 30 So 3d at 662-663. By contrast, the statutes at issue in the present case refer to the "price" of the property that is stolen, rather than its "value." See MCL 750.356c and MCL 750.356d. Accordingly, the value of the property was irrelevant to defendant's conviction for first-degree retail fraud and, as already noted, Carble offered testimony concerning the price of the stolen bedding merchandise.

## IV. PRESENTENCE INVESTIGATION REPORT

For his last claim of error, defendant argues that his PSIR must be amended because it incorrectly indicates that he was on parole at the time of the instant offense. The prosecution fully concedes this argument and we therefore remand this case for the ministerial task of correcting the PSIR.

Defendant's conviction and sentence are affirmed and this case is remanded for the ministerial task of correcting the PSIR in accordance with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood