# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

STEVEN ERIC SHAW,

       Defendant-Appellant.

UNPUBLISHED
June 22, 2017

No. 331125
Branch Circuit Court
LC No. 15-061537-FC

Before: TALBOT, C.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Steven Eric Shaw, was convicted by a jury of first-degree child abuse[1] and felony murder[2] and sentenced to 23 years and 9 months to 50 years' imprisonment for the first-degree child abuse conviction and life imprisonment without the possibility of parole for the felony-murder conviction. Shaw appeals as of right. We affirm.

This matter arises from the death of Carson Burm on May 30, 2014, which resulted from injuries Carson suffered while in Shaw's care on May 29, 2014. The evidence showed that when Carson's mother, Laura Kidney, left for work around 11:30 a.m. on May 29, 2014, Carson was apparently in good health. Shortly thereafter Kidney's temporary house guest, Kara McDowell, came to the apartment to pick up her three-year-old daughter, KM, and gather their belongings, as McDowell intended to move out that day. McDowell testified that she was at the apartment for approximately 10 to 15 minutes and that, when she left, Carson was in his bouncy seat in the living room and did not appear to be in distress. Carson's almost three-year-old sister, PB, was also in the living room.

Testifying in his own defense, Shaw estimated that McDowell spent approximately 15 to 20 minutes gathering her belongings and recalled that McDowell asked him to contact one of his friends on her behalf before she left. He did not have any credit on his prepaid cellphone, so he stepped outside to access the neighbor's WiFi connection in order to make the call. According to Shaw, McDowell was alone with the children while he was outside and was ready to leave when

---

[1] MCL 750.136b(2).

[2] MCL 750.316(1)(b).

-1-

he returned. Shaw was unsure how Carson appeared at this point because Carson was situated behind him as he spoke with McDowell.

Shaw explained that after McDowell left he moved between the kitchen and living room, trying to get a snack for PB and something for himself to eat. He eventually noticed that Carson seemed tired and removed Carson from the bouncy seat, placing him upright on a blanket on the living room floor. However, Shaw repositioned Carson onto his stomach because Carson was "acting kind of wobbly" and did not look like he would sit up independently. Around 12:30 or 12:45 p.m., Shaw decided to put Carson down for a nap in the main bedroom. When Shaw returned to the bedroom approximately 20 minutes later, Carson had "white stuff" coming from his mouth and nose and did not appear to be breathing. Unable to wake Carson, Shaw called 911 and performed CPR until first responders arrived at the apartment.

Carson was taken to Community Health Center of Branch County and then transferred to Bronson Methodist Hospital, but the emergency physicians were unable to revive him. Various medical experts testified that Carson's injuries included subarachnoid and subdural bleeding inside his skull, retinal hemorrhages, and multiple skull fractures presenting in a complex and extensive fracture pattern in the posterior area of his head. CT and x-ray imaging also revealed that Carson had a fracture on the left side of his clavicle and chipped fractures at the ends of both femurs.

For his first claim of error, Shaw argues that the trial court erred by denying his motion for a new trial or *Ginther*[3] hearing. Shaw contends that, at minimum, a *Ginther* hearing was warranted because he submitted an offer of proof in the form of an affidavit outlining deficiencies in defense counsel's performance which required expansion of the record to allow proper review. We disagree.

This Court reviews a trial court's decision regarding whether to hold an evidentiary hearing for an abuse of discretion, which occurs "when the court chooses an outcome that falls outside the range of reasonable and principled outcomes."[4] A defendant seeking a new trial on the basis of ineffective assistance of counsel must demonstrate that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different."[5] Because it is incumbent upon the defendant to demonstrate "both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim."[6] Where the defendant's ineffective assistance of counsel claim rests on facts outside the record, an evidentiary hearing may be warranted to further develop the record for review.[7]

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008).

[5] *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

[6] *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

[7] *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), quoting *Ginther*, 390 Mich at 442-443.

However, an evidentiary hearing is not required when the defendant fails to demonstrate that factual development of the record would advance his claim.[8] Although it is true that some of the concerns raised by Shaw depend on facts outside of the record, the trial court did not abuse its discretion in denying Shaw's request for an evidentiary hearing because each instance of purported ineffective assistance of counsel could be considered—and rejected—on the existing record.

Shaw first argued that he was denied the effective assistance of counsel when his first attorney, Eric Goodwin, failed to investigate medical issues or interview witnesses in a timely manner because Goodwin knew he would be retiring before Shaw was tried. The extent of Goodwin's investigation is not discernable from the record, nor are the reasons for his investigative decisions. However, even if Shaw was able to develop a record showing that Goodwin unreasonably and intentionally delayed his investigation, it is improbable that that outcome of the trial would have been different had Goodwin proceeded with more diligence. Shaw fails to point to any evidence or tactical advantage that was lost as a result of the delay and his trial attorneys were ultimately well prepared to challenge the prosecution's case. Accordingly, further factual development regarding this issue would not have advanced Shaw's claim.

Next, Shaw argued that he was denied the effective assistance of counsel because the substitution of counsel following Goodwin's retirement effectively deprived him of the right to a speedy trial. This issue did not require factual development because it lacked merit as a matter of law. It is the state, and not defense counsel, that is constitutionally required to ensure criminal defendants are brought to trial in a timely manner.[9] In any event, Shaw was arrested on June 2, 2014, and brought to trial on October 6, 2015. Because the delay between his arrest and trial was under 18 months, Shaw's speedy trial claim required proof of prejudice resulting from the delay[10] and, as already noted, Shaw failed to allege in what manner he was prejudiced by the pretrial delay.

Next, Shaw averred that his substitute counsel, Terri Norris, rendered ineffective assistance because she was emotionally unfit to represent him. According to Shaw, before sentencing Norris disclosed to him that she could not effectively represent him because she was prejudiced against his case, having recently obtained custody of her grandson as a result of child abuse. However, the record contradicts Shaw's assertion that Norris felt she had rendered ineffective assistance. At sentencing, Norris said, "I believe that myself and Mr. Bucklin have aggressively defended [Shaw]," and opined that they made it clear at trial that they supported Shaw's position. Moreover, even if the record reflected that Norris was personally involved in legal proceedings stemming from allegations of child abuse, that fact would not further Shaw's ineffective assistance of counsel claim because it does not appear that Norris's personal life affected the outcome of the trial. Shaw was represented at trial by two attorneys—Norris and

---

[8] *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

[9] *Barker v Wingo*, 407 US 514, 527; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

[10] *People v Waclawski*, 286 Mich App 634, 665; 780 NW2d 321 (2009).

Ryan Bucklin—and he does not contend that Bucklin's performance was affected by Norris's potential conflict of interests. Additionally, as already noted, Shaw's trial attorneys were well prepared and presented a reasonable defense.

Finally, Shaw argued that he was denied the effective assistance of counsel because his attorneys failed to conduct pretrial investigation regarding the medical component of his case. In support of this argument, Shaw also offered an article from a medical journal, which discusses the frequent misdiagnosis of traumatic head injuries in infants as shaken baby syndrome. This argument did not require factual development because it was clear from the record that Shaw's attorneys did, in fact, conduct a thorough investigation into the medical evidence that would be presented against Shaw. Norris and Bucklin consulted with renowned pathologist Dr. Werner Spitz, called him as an expert witness at Shaw's trial, and intelligibly cross-examined the prosecution's expert witnesses. Additionally, the scholarly article relied upon by Shaw has little bearing on his case because the prosecution did not contend that Carson had been injured by excessive or violent shaking. Indeed, each of the medical experts agreed that the complex fractures to Carson's skull were caused by a blunt force impact, and Dr. Spitz specifically explained that the medical community no longer views retinal hemorrhages like those suffered by Carson as indicative of an injury caused by shaking. Because further factual development would not have advanced Shaw's various claims of ineffective assistance of counsel, the trial court did not abuse its discretion by denying Shaw's motion for a *Ginther* hearing.

For his next claim of error, Shaw challenges the sufficiency of the evidence presented against him, arguing that the prosecution failed to prove beyond a reasonable doubt that he was the person who caused Carson's fatal injuries. We disagree.

This Court reviews challenges to the sufficiency of the evidence de novo.[11] The evidence is viewed "in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt."[12] In making this determination, the Court must not interfere with the factfinder's role of "determining the weight of the evidence or the credibility of witnesses."[13]

"[I]t is well settled that identity is an element of every offense."[14] But like other essential elements of a crime, the prosecution can present sufficient evidence of the defendant's

---

[11] *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014).

[12] *Id.*, quoting *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010) (quotation marks omitted).

[13] *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

[14] *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

identity as the perpetrator by way of circumstantial evidence.[15]  Moreover, "the prosecutor need not negate every reasonable theory consistent with innocence."[16]

The prosecution presented sufficient evidence from which a rational jury could conclude beyond a reasonable doubt that Shaw caused Carson's injuries.  It was essentially undisputed that Carson suffered a blunt force injury to the head and that the impact would have required significant force to cause the fracture pattern seen on Carson's skull.  The prosecution's experts explained that in the absence of a reasonable explanation regarding the mechanism of the injury, it was probable that the injuries were caused by some type of nonaccidental trauma.   The prosecution also presented evidence showing that Shaw, Carson, and PB were the only people in the apartment in the approximately 60 minutes proceeding Carson's loss of consciousness and that it was improbable that a two- to three-year-old toddler would be capable of inflicting the magnitude of injuries that Carson sustained.  Viewing this evidence in the light most favorable to the prosecution, a rational jury could find that the prosecution proved beyond a reasonable doubt that Shaw inflicted Carson's injuries and was, therefore, guilty of first-degree child abuse and felony murder.

Next, Shaw argues that autopsy photographs presented by the prosecution should have been excluded from evidence under MRE 403 because they were unfairly prejudicial.  We disagree.

To preserve a claim that evidence was improperly admitted at trial, the party challenging the evidence must object at the time of admission.[17]  Before each of the autopsy photographs were admitted at trial, defense counsel indicated that she had no objections to the proffered evidence.  Thus, this issue is not preserved for appeal.  "A defendant pressing an unpreserved claim of error must show a plain error that affected substantial rights, and the reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings."[18]  Moreover, defense counsel's acquiescence to admission of the photographs effectively waived appellate review of this issue because there is no error to review when, rather than forfeiting an issue by failing to assert a right in a timely manner, the defendant waives an issue by intentionally relinquishing a known right.[19]  In any event, even if this unpreserved issue had not been waived at trial, Shaw's argument lacks merit.

---

[15] *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999) ("Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to prove the elements of a crime.").

[16] *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

[17] *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004).

[18] *People v Parker*, 288 Mich App 500, 509; 795 NW2d 596 (2010), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[19] *People v Dobek*, 274 Mich App 58, 65; 732 NW2d 546 (2007).

Like other evidence, photographs are generally admissible at trial if they are relevant under MRE 401,[20] which provides that evidence is relevant if it has "any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence."[21] But under MRE 403, even relevant evidence may be excluded at the trial court's discretion "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[22] "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence."[23]

Shaw argues that he was unfairly prejudiced by the admission of cumulative and gruesome autopsy photographs at trial. This argument lacks merit because it fails to recognize that the admissibility of evidence under MRE 403 does not turn solely on the possible prejudicial effect of proposed evidence. Because the probative value of the evidence challenged by Shaw was not substantially outweighed by the danger of unfair prejudice, MRE 403 did not mandate its exclusion.

The photographs depicted Carson's injuries and were relevant to whether Shaw knowingly or intentionally caused serious physical harm to Carson—an essential element of the prosecution's case.[24] By enabling the jury to visualize the severity of Carson's injuries, the images made it more probable that Carson's injuries were inflicted intentionally. That fact was particularly important here because none of the witnesses testified from personal knowledge regarding the mechanism by which Carson was injured. Moreover, evidence demonstrating the magnitude of Carson's injuries was necessary to rebut various theories presented by the defense, namely, that Carson's injuries could have been caused accidentally or by Carson's young sister. Additionally, the photographs were helpful in corroborating the lengthy medical testimony concerning Carson's injuries and allowed the medical experts to illustrate the bases for their opinions.

Although graphic images undoubtedly present a risk of being given undue weight by the jury, photographic evidence need not be excluded simply because of its gruesome nature.[25] That is, "if photographs are otherwise admissible for a proper purpose, they are not rendered

---

[20] *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009).

[21] *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001).

[22] *People v Blackston*, 481 Mich 451, 461; 751 NW2d 408 (2008).

[23] *Id.* at 462, quoting *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995), mod on other grounds by 450 Mich 1212 (1995).

[24] See *People v Gould*, 225 Mich App 79, 87; 570 NW2d 140 (1997) ("The elements of first-degree child abuse are (1) the person, (2) knowingly or intentionally, (3) causes serious physical or mental harm to a child." (Footnotes omitted)).

[25] *Gayheart*, 285 Mich App at 227.

inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors."[26]  Likewise, "[p]hotographs are not excludable simply because a witness can orally testify about the information contained in the photographs."[27]  Here, it does not appear that the risk of unfair prejudice presented by the photographs substantially outweighed their significant probative value.  Thus, the admission of the images at Shaw's trial did not amount to plain error.

Next, Shaw argues that he was unfairly prejudiced by improper comments made by the trial court and the prosecution during voir dire.  We disagree.

A party challenging judicial conduct before a jury must preserve the issue for review by objecting in the trial court.[28]  Likewise, a defendant must timely and specifically object to an alleged prosecutorial error and request a curative instruction to preserve the issue for review.[29]  Shaw failed to raise an objection to either of the challenged remarks in the trial court and, thus, failed to preserve this issue for review.  Because this issue is unpreserved, this Court's review is limited to plain error affecting substantial rights.[30]  To establish that a plain error affected substantial rights, "there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings."[31]  Reversal is only warranted on the basis of a plain error if the error "led to the conviction of an innocent defendant or seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ."[32]

A trial judge's conduct may deprive a defendant of a fair trial when, "considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party."[33]  Similarly, "[a] defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence."[34]

Shaw argues that remarks made by the trial court and the prosecution during voir dire appealed to the jurors' sympathy and, thus, interfered with his right to a fair trial by an impartial jury.  Specifically, the trial court said: "[A]nytime that there's a passing away of someone, there's going to be grief.  And anytime that there's a passing away of a child, I think it strikes a

---

[26] *Mills*, 450 Mich at 77, quoting 29 Am Jur 2d, Evidence, § 787, pp 860-861.

[27] *Mills*, 450 Mich at 76.

[28] *People v Sardy*, 216 Mich App 111, 118; 549 NW2d 23 (1996).

[29] *Unger*, 278 Mich App at 234-235.

[30] *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011).

[31] *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014) (citation omitted).

[32] *Id*. at 61-62 (citation and quotation marks omitted) (alteration in original).

[33] *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233 (2015).

[34] *Dobek*, 274 Mich App at 63-64.

cord with everyone's mental and emotional aspects of life. If it didn't, I don't think we'd be alive inside." Shortly thereafter, the prosecution remarked: "And like the judge said, we're all human beings. And it's certainly okay to feel empathy for the child. It's certainly okay to be disturbed of the photographs and things like that. We all are." Viewed in context, it is clear that neither of these comments were improper. In both instances, the challenged remarks merely acknowledged the obvious emotional element of the subject matter and were followed by instructions that the case should be determined based upon logic, reason, and the evidence presented, rather than an emotional reaction to the subject. Because both comments were proper, Shaw has failed to demonstrate a plain error affecting his substantial rights.

Next, Shaw raises a vague evidentiary error stemming from the admission of evidence suggesting that Carson may have suffered a previous injury to his clavicle, relying on *People v Knox*[35] in support of his claim of error.[36] Because Shaw raises this issue for the first time on appeal, it is unpreserved.[37] "A defendant pressing an unpreserved claim of error must show a plain error that affected substantial rights, and the reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings."[38] Although the factual circumstances at issue in *Knox* are strikingly similar to those presented in Shaw's case, *Knox* does not support Shaw's claim of error.

In *Knox*, the prosecution presented a circumstantial case against the defendant, contending that he must have caused his infant son's fatal injuries because he was the only person in the apartment at the relevant time who was physically capable of inflicting the degree of harm the child sustained.[39] The Supreme Court reversed the defendant's felony-murder and first-degree child abuse convictions based, in part, on an error involving evidence of the victim's prior injuries.[40]

However, despite the factual parallels between the two cases, *Knox* is distinguishable in an important aspect. In pertinent part, the *Knox* Court explained,

> [W]e agree with both the Court of Appeals majority and the dissent that the signs of past physical abuse of the child were relevant to prove that his subsequent fatal

---

[35] *Knox*, 469 Mich 502.

[36] Shaw also refers to several rules of evidence governing the admissibility and presentation of character evidence. However, to the extent that Shaw argues evidence of Carson's prior injury amounted to improper character evidence, his argument lacks merit because such evidence did not relate to his character or the character of any other witness.

[37] *Knox*, 469 Mich at 508.

[38] *Parker*, 288 Mich App at 509, citing *Carines*, 460 Mich at 763.

[39] *Knox*, 469 Mich at 504-506, 513.

[40] *Id*. at 514-515.

injuries were not inflicted accidentally.  We concur, however, with the dissent that the trial court committed error requiring reversal in permitting the prosecutor to use this evidence for an improper purpose.  The prosecutor introduced the evidence of prior injury not only to show that the earlier events were abusive, but also to convince the jury that defendant had caused those prior injuries, despite the absence of any evidence that defendant had committed the past abuse.[41]

By contrast, unlike the prosecutor in *Knox*, the prosecution in this case did not argue to the jury that Shaw was responsible for Carson's previous clavicle fracture.  In fact, in closing arguments, the prosecution hypothesized that Shaw "broke for some reason" and suggested that he may have "snapped" on the day Carson was injured.  These arguments imply that Shaw's actions involved an isolated incident and, thus, did not rely on an improper propensity theory in violation of MRE 404(b).  Accordingly, Shaw is not entitled to relief on this basis.

Lastly, Shaw argues that he was denied the right to a fair trial when the prosecution's rebuttal witness, police officer Derek Coats, was permitted to remain in the courtroom despite a sequestration order.  We disagree.

Shaw failed to raise this issue in the trial court.  As such, it is unpreserved.[42]  "A defendant pressing an unpreserved claim of error must show a plain error that affected substantial rights, and the reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings."[43]

Shaw's argument lacks merit for several reasons, most notably because it is unsupported by the record.  Although it is unclear whether Officer Coats was actually subject to the sequestration order,[44] at the conclusion of his testimony in the prosecution's case-in-chief, the court agreed that Officer Coats could remain in the courtroom to observe the proceedings.  Thus, even if Officer Coats was included in the initial sequestration order, he remained in the

---

[41] *Id*. at 513.

[42] *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007) ("For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court.").

[43] *Parker*, 288 Mich App at 509, citing *Carines*, 460 Mich at 763.

[44] At the outset of the trial, the court raised the issue of witness sequestration, as contemplated by MRE 615.  In response, the prosecution indicated that it had no objection to a sequestration order, but qualified its acquiescence by saying, "[o]ther than the investigative police officer."  The prosecution then explained that the other people in the courtroom with an interest in the case would not be called to testify, and the court said, "All right."  Although Officer Coats was not identified by name at trial, the district court excluded Officer Coats from an earlier sequestration order after the prosecution identified him as "the court officer" at Shaw's preliminary examination.

-9-

courtroom on the second day of trial with the court's knowledge and consent. Thus, it does not appear that he violated the sequestration order.

Moreover, "[t]he purposes of sequestering a witness are to prevent him from coloring his testimony to conform with the testimony of another and to aid in detecting testimony that is less than candid."[45] Shaw takes issue with the trial court's decision to allow Officer Coats to testify as a rebuttal witness, but there is no indication that Officer Coats's rebuttal testimony was tainted by his exposure to other testimony or evidence. In fact, the scope of Officer Coats's rebuttal testimony was limited to refuting portions of Shaw's own testimony, which Officer Coats expressly indicated he was not present for. As such, there is no reason to believe that Officer Coats's rebuttal testimony was colored by Shaw's testimony and the trial court did not err by allowing the prosecution to call Officer Coats as a rebuttal witness.

Affirmed.

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael J. Kelly

---

[45] *People v Meconi*, 277 Mich App 651, 654; 746 NW2d 881 (2008) (quotation marks and citations omitted).